JAMES N. KRAMER (SBN 154709)
Email: jkramer@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
Email: atalarides@orrick.com
SUZETTE J. BARNES (SBN 273116)
Email: sbarnes@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    (415) 773-5700
Facsimile:    (415) 773-5759

Attorneys for Defendants PayPal, Inc. and PayPal
Holdings, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| KINGSLEY EZEUDE and CHUKWUKA OBI on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>PAYPAL, INC. and PAYPAL HOLDINGS, INC.,<br><br>               Defendants. | Case No. 5:17-cv-02558-LHK<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        January 4, 2018<br>Time:       1:30 p.m.<br>Judge:     Honorable Lucy H. Koh<br>Courtroom:  8 |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on January 4, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Lucy H. Koh, at 280 South 1st Street, San Jose, California 95113, Defendants PayPal, Inc. and PayPal Holdings, Inc. (together, "PayPal") will and hereby do move the Court for an order dismissing Plaintiffs' Complaint. This motion is made pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure on the grounds that the Amended Complaint fails to state a claim and fails to comply with Rule 9(b).

PayPal respectfully requests that the Court dismiss Plaintiffs' Complaint. The motion is based on this Notice and the Memorandum of Points and Authorities below; the accompanying Request for Judicial Notice and exhibits attached thereto; the papers on file in the action; argument of counsel at the hearing; and other such matters as may be judicially noticed or come before the Court at the hearing on this matter.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs' claim for aiding and abetting fraud should be dismissed because:

    a. Plaintiffs' claim is not plausible in light of their own allegations that PayPal took actions that hindered Charles Scoville's ("Scoville") operation of Traffic Monsoon, LLC ("Traffic Monsoon");

    b. Plaintiffs fail to sufficiently allege that PayPal actually knew of Scoville and Traffic Monsoon's alleged fraud;

    c. Plaintiffs fail to allege with particularity that PayPal intentionally and substantially assisted the commission of the alleged fraud;

    d. Plaintiffs do not plead the underlying fraud with particularity because they fail to allege that they actually relied on any alleged misrepresentation or omission by Scoville or Traffic Monsoon.

2. Whether Plaintiffs' claim for aiding and abetting breach of fiduciary duty should be dismissed because:

    a. As with their claim for aiding and abetting fraud, Plaintiffs' claim is not

OHSUSA:767353230.2

1   plausible, Plaintiffs fail to sufficiently allege that PayPal actually knew of

2   Scoville and Traffic Monsoon's alleged breach of fiduciary duty, and fail

3   to allege with particularity that PayPal intentionally and substantially

4   assisted the alleged breach;

5        b.     Plaintiffs plead no facts establishing that PayPal knew that Traffic

6   Monsoon owed fiduciary duties to its customers.

7       3.     Whether Plaintiffs' claim for violation of California Corporations Code § 25504

8   should be dismissed because:

9        a.     Plaintiffs do not allege an offer or sale of securities in California;

10       b.     Plaintiffs do not allege facts sufficient to show that PayPal materially

11  assisted Scoville and Traffic Monsoon to sell or offer to sell securities to

12  Plaintiffs through the use of false and misleading statements;

13       c.     Plaintiffs fail to allege any facts showing that PayPal intended to induce

14  Plaintiffs to rely on representations it knew to be false or misleading.

15      4.     Whether Plaintiffs' claim for negligence should be dismissed because:

16       a.     By agreeing to the PayPal User Agreement, Plaintiffs expressly released

17  PayPal from liability for injuries arising directly or indirectly from third

18  parties;

19       b.     As a payment service processor, PayPal owed no legal duty of care to

20  Plaintiffs vis-à-vis Traffic Monsoon or other merchants using PayPal's

21  services, and Plaintiffs otherwise fail to allege sufficient facts showing that

22  PayPal had a duty to protect them from harm allegedly caused by Scoville

23  and Traffic Monsoon;

24       c.     Plaintiffs have alleged no facts establishing an exception to the economic

25  loss rule, which bars negligence claims for purely economic loss.

26      5.     Whether Plaintiffs' claim for gross negligence should be dismissed because

27  California does not recognize a common law cause of action for gross negligence separate from

28  negligence.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................- 1 -

FACTUAL BACKGROUND ......................................................................- 3 -

I.     PayPal And Its Business ...................................................................- 3 -

II.    Traffic Monsoon and Charles Scoville ...........................................- 4 -

III.   PayPal Unilaterally Limits Traffic Monsoon's PayPal Account ....- 4 -

IV.   The SEC Files Suit Against Traffic Monsoon And Scoville ..........- 5 -

V.    The Certified Interlocutory Appeal Before The Tenth Circuit ......- 6 -

VI.   Unable To Sue Traffic Monsoon Or Scoville, Plaintiffs Sue PayPal Instead.................- 6 -

ARGUMENT ............................................................................................- 7 -

I.     Plaintiffs Fail To Plead With Particularity That PayPal Aided And Abetted Traffic Monsoon And Scoville's Alleged Fraud........................................................................- 7 -

    A.    Plaintiffs' Aiding And Abetting Claim Is Implausible ......................- 8 -

    B.    Plaintiffs Fail To Adequately Plead That PayPal Had Actual Knowledge Of Traffic Monsoon And Scoville's Alleged Fraud........................- 9 -

          1.    Knowledge That Traffic Monsoon Was A Pay-To-Click Business Operated By Scoville Cannot Establish Actual Knowledge That Traffic Monsoon Was A Ponzi Scheme ....................................................- 10 -

          2.    Knowledge Of Unusual Account Activity Cannot Establish Actual Knowledge That Traffic Monsoon Was A Ponzi Scheme ....................................................- 11 -

          3.    Knowledge That AdPacks Were Variously Called "Investments" And "Revenue Sharing Positions" Cannot Establish Actual Knowledge That Traffic Monsoon Was A Ponzi Scheme ..........................................- 13 -

    C.    Plaintiffs Fail To Adequately Plead That PayPal Intentionally And Substantially Assisted Traffic Monsoon And Scoville's Alleged Fraud ........................................................................- 14 -

    D.    Plaintiffs Fail To Plead The Alleged Underlying Fraud With Particularity ....................................................................- 16 -

II.     Plaintiffs' Claim For Aiding And Abetting Breach Of Fiduciary Duty Fails...............- 16 -

III.    Plaintiffs' Claim Under Cal. Corp. § 25504.1 Fails.....................................- 18 -

        A.      Plaintiffs Fail To Allege An Offer Or Sale Of A Security In
                California ...............................................................................- 18 -

        B.      Plaintiffs Fail To Allege Facts Showing That PayPal "Materially
                Assisted" Traffic Monsoon's Alleged Violation Of Section 25401 .................- 19 -

        C.      Plaintiffs Fail To Allege Facts Showing That PayPal Acted With
                An "Intent To Deceive Or Defraud" Plaintiffs .................................- 20 -

IV.     Plaintiffs' Claim For Negligence Fails ........................................................- 21 -

        A.      Plaintiffs' Negligence Claim Is Barred By The PayPal User
                Agreement ...............................................................................- 21 -

        B.      Even If Plaintiffs Did Not Waive Their Right To A Claim For
                Negligence, PayPal Did Not Owe Them A Duty Of Care Vis-à-vis
                Traffic Monsoon And Scoville..........................................................- 22 -

        C.      Plaintiffs' Negligence Claim Is Also Barred By The Economic Loss
                Rule .......................................................................................- 24 -

V.      Plaintiffs' Claim For Gross Negligence Is Not Cognizable...........................- 25 -

CONCLUSION ..............................................................................................- 25 -

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adam v. Silicon Valley Bancshares*,
 1994 WL 619300 (N.D. Cal. Feb. 8, 1994) ...................................................................8

*In re Agape Litig.*,
 773 F. Supp. 2d 298 (E.D.N.Y. 2011) ..............................................................13, 14

*Architectural Res. Grp., Inc. v. HKS, Inc.*,
 2013 WL 568921 (N.D. Cal. Feb. 13, 2013) .............................................................25

*Arroyo v. Chattem, Inc.*,
 926 F. Supp. 2d 1070 (N.D. Cal. 2012) ....................................................................16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................7, 8, 16

*Baltazar v. Apple, Inc.*,
 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) .............................................................16

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................................20

*Benedek v. PLC Santa Monica, LLC*,
 104 Cal. App. 4th 1351 (2002) ..................................................................................21

*Bennett v. U.S. Cycling Fed'n*,
 193 Cal. App. 3d 1485 (1987) ....................................................................................21

*Benson v. JPMorgan Chase Bank, N.A.*,
 2010 WL 1526394 (N.D. Cal. April 15, 2010) .........................................................15

*Bily v. Arthur Young & Co.*,
 3 Cal. 4th 370 (1992) .................................................................................................22

*Calderon v. Total Wealth Mgmt., Inc.*,
 2016 WL 898823 (S.D. Cal. Mar. 9, 2016) ...............................................................19

*Casey v. U.S. Bank Nat'l Ass'n*,
 127 Cal. App. 4th 1138 (2005) ........................................................................*passim*

*Chance World Trading E.C. v. Heritage Bank of Commerce*,
 438 F. Supp. 2d 1081 (N.D. Cal. 2005) ....................................................................12

*Chazen v. Centennial Bank*,
 61 Cal. App. 4th 532 (1998) ......................................................................................23

OHSUSA:767353230.2

*Daniels-Hall v. Nat'l Educ. Ass'n,*
   629 F.3d 992 (9th Cir. 2010) ...........................................................................7, 8

*Darnaa, LLC v. Google, Inc.,*
   2015 WL 7753406 (N.D. Cal. Dec. 2, 2015) ............................................22

*Diamond Multimedia Sys., Inc. v. Super. Ct.,*
   19 Cal. 4th 1036 (1999) ...........................................................................18

*In re Ditech Networks, Inc. Derivative Litig.,*
   2008 WL 820705 (N.D. Cal. Mar. 26, 2008) ............................................17

*Emery v. Visa Int'l Servs. Ass'n,*
   95 Cal. App. 4th 952 (2002) ...............................................................7, 13

*ExxonMobil Oil Corp. v. Nicoletti Oil, Inc.,*
   713 F. Supp. 2d 1105 (E.D. Cal. 2010) ....................................................25

*Ferrell v. S. Nev. Off-Road Enthusiasts, Ltd.,*
   147 Cal. App. 3d 309 (1983) ....................................................................21

*Ghlachi v. U.S. Bank, N.A.,*
   2015 WL 12655411 (C.D. Cal. Apr. 29, 2015) .......................................23

*Grappo v. McMills,*
   11 Cal. App. 5th 996 (2017) ....................................................................25

*Howard v. Super. Ct.,*
   2 Cal. App. 4th 745 (1992) ..................................................................9, 14

*Janney v. Mills,*
   944 F. Supp. 2d 806 (N.D. Cal. 2013) .....................................................16

*Jimenez v. 24 Hour Fitness USA, Inc.,*
   237 Cal. App. 4th 546 (2015) ...................................................................25

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.,*
   1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ..................................18, 20

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009) .............................................................7, 16

*Kesner v. Super. Ct.,*
   1 Cal. 5th 1132 (2016) .............................................................................24

*Lazar v. Super. Ct.,*
   12 Cal. 4th 631 (1996) .............................................................................16

*Litson-Gruenber v. JP Morgan Chase & Co.,*
   2009 U.S. Dist. LEXIS 117749 (N.D. Tex. Dec. 16, 2009) ...............10, 11

OHSUSA:767353230.2

*McFall v. Stacy and Witbeck, Inc.*,
    2016 WL 6248882 (N.D. Cal. Oct. 26, 2016) ...................................................................9, 10

*McGraw Co. v. Aegis Gen. Ins. Agency, Inc.*,
    2016 WL 3745063 (N.D. Cal. July 13, 2016) ....................................................................7

*Mendelsohn v. Capital Underwriters, Inc.*,
    490 F. Supp. 1069 (N.D. Cal. 1979) ..............................................................................15

*Meram v. Citizens Title & Trust, Inc.*,
    2011 WL 11463 (S.D. Cal. Jan. 3, 2011) ........................................................................16

*MTC Elec. Techs. Co. v. Leung*,
    876 F. Supp. 1143 (C.D. Cal. 1995)................................................................................18

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ..........................................................................14

*Paralift, Inc. v. Super. Ct.*,
    23 Cal. App. 4th 748 (1993) ...........................................................................................21

*Paz v. State*,
    22 Cal. 4th 550 (2000) ....................................................................................................22

*Ray v. BlueHippo Funding, LLC*,
    2008 WL 1995113 (N.D. Cal. May 6, 2008) ..................................................................14

*Rosner v. Bank of China*,
    528 F. Supp. 2d 419 (S.D.N.Y. 2007).......................................................................12, 15

*Rowland v. Christian*,
    69 Cal. 2d 108 (1968) ...............................................................................................22, 23

*S.F. Unified Sch. Dist. v. W.R. Grace & Co.*,
    37 Cal. App. 4th 1318 (1995) .........................................................................................24

*Schaffer Family Investors, LLC v. Sonnier*,
    120 F. Supp. 3d 1028 (C.D. Cal. 2015) ..........................................................................20

*In re Sharp Int'l Corp.*,
    281 B.R. 506 (Bankr. E.D.N.Y. 2002)............................................................................13

*Siegal v. Gamble*,
    2016 WL 1085787 (N.D. Cal. Mar. 21, 2016).................................................................17

*Software Design & Application v. Hoefer & Arnett*,
    49 Cal. App. 4th 472 (1996) ...........................................................................................24

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014).............................................................................25

OHSUSA:767353230.2

*Spencer v. DHI Mortg. Co.*,
    642 F. Supp. 2d 1153 (E.D. Cal. 2009)..................................................................24

*Wallack v. Idexx Labs., Inc.*,
    2013 WL 5206190 (S.D. Cal. Sept. 12, 2013) ........................................................19

**Rules and Statutes**

Fed. R. Civ. Proc.
    Rule 8(a)........................................................................................................16, 20
    Rule 9(b) ........................................................................................................ *passim*
    Rule 12(b)(6)..........................................................................................................7

Cal. Corp. Code
    § 25008(a)-(b) .....................................................................................................19
    § 25401................................................................................................2, 18, 19, 20
    § 25504.1 ........................................................................................................ *passim*

OHSUSA:767353230.2

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This lawsuit is an opportunistic attempt to hold PayPal[1] liable for harm allegedly caused by others who are not—and currently cannot be made—parties to this case. Despite the fact that Plaintiffs expressly agreed and acknowledged by signing up for PayPal's services that PayPal is only a "custodian" of funds that does "not have control of or liability for the products or services that are paid for with [PayPal's] Services," the Complaint is premised on the assertion that Plaintiffs are victims of a Ponzi/Pyramid scheme operated by Charles David Scoville ("Scoville") and Traffic Monsoon, LLC ("Traffic Monsoon"), and that PayPal, as Traffic Monsoon's primary payment service provider, is liable for Plaintiffs' alleged losses.

Traffic Monsoon and Scoville are currently embroiled in litigation with the Securities and Exchange Commission ("SEC") in the District of Utah, and that court has appointed a Receiver over both Traffic Monsoon and Scoville's assets in order to recover alleged losses for Traffic Monsoon's customers—including Plaintiffs. That court has also stayed litigation against Traffic Monsoon and Scoville. Despite the pendency of the Utah proceeding, Plaintiffs seek recovery from PayPal. As explained below, however, Plaintiffs' Complaint fails to state any viable claim against PayPal.

Plaintiffs' aiding and abetting claims must be dismissed because they fail to allege that PayPal "actually knew" that Scoville was operating Traffic Monsoon as a Ponzi scheme, defrauding his customers, or breaching fiduciary duties that he allegedly owed to purchasers of Traffic Monsoon's advertising products. Indeed, the question of whether Traffic Monsoon's business model even constitutes a Ponzi scheme is unsettled, and has been certified for interlocutory appeal to the Tenth Circuit. Regardless of the nature of Traffic Monsoon's business, it is undisputed that PayPal unilaterally limited its account and froze the funds therein. Plaintiffs also allege that after the limitation was established, PayPal set up a hotline for concerned customers of Traffic Monsoon, and thereafter told some individuals that Traffic Monsoon was a scam. Such conduct underscores the implausibility of the notion that PayPal

---

[1] Defendants PayPal, Inc. and PayPal Holdings, Inc. are referred to collectively as "PayPal."

knowingly and intentionally aided and abetted Traffic Monsoon and Scoville's alleged fraud or breach of fiduciary duty. At most, Plaintiffs' allegations show that PayPal had reason to suspect Traffic Monsoon. Putting aside the fact that PayPal acted upon those suspicions to prevent Scoville and Traffic Monsoon from processing further payments using its service, rather than aid and abet their alleged scheme, it is well-settled that allegations of "suspicion" do not satisfy the actual knowledge standard for alleging aiding and abetting claims.

Plaintiffs' attempt to allege the "intentional and substantial assistance" element of their aiding and abetting claims fares no better. The heft of Plaintiffs' allegations is that PayPal, a payment processor, processed a significant number of payments for Traffic Monsoon. This activity, which falls well within the "ordinary business transactions" of PayPal, cannot amount to substantial assistance under California law in the absence of allegations that PayPal intended to help the primary offender commit a specific fraud. Plaintiffs do not – and cannot – allege such critical facts. Put simply, there is nothing tortious about processing payments for Traffic Monsoon in the same manner PayPal processes payments for any other merchant. Nor is there anything wrong with PayPal charging fees to its customers. Far from "cloak[ing] Traffic Monsoon with an air of legitimacy," Plaintiffs themselves allege that PayPal took actions that are inconsistent with any intent to assist Traffic Monsoon—limiting Traffic Monsoon's PayPal account and setting up a customer service line for individuals who were concerned about Traffic Monsoon. Try as they might, Plaintiffs cannot concoct an aiding and abetting claim out of the mere fact that PayPal, for a time, did business with Traffic Monsoon and its customers.

Plaintiffs' claim under California Corporations Code section 25504.1 is equally flawed. Plaintiffs predicate this claim upon Traffic Monsoon's alleged violation of California Corporations Code section 25401, which prohibits the purchase or sale (or offers to purchase or sell) securities in the state of California by means of material misrepresentations or omissions. But Plaintiffs fail to plead the purchase or sale of Traffic Monsoon's products in the state of California, even assuming that they constitute securities under California law. Nor can they do so—Plaintiffs and the proposed class are all non-U.S. residents, and Traffic Monsoon is a Utah-based LLC that promoted and sold its products from Utah. Even putting aside that core

jurisdictional defect, Plaintiffs' claim would still fail because they do not come close to alleging facts establishing that PayPal (i) materially assisted Traffic Monsoon and Scoville in selling securities by means of false or misleading statements, and (ii) intended to defraud Plaintiffs.

Plaintiffs' claim for negligence fails because they contractually disclaimed any negligence claim against PayPal resulting from the direct or indirect actions of third parties like Traffic Monsoon and Scoville, and agreed and acknowledged that PayPal is only a "custodian" of funds that does "not have control of or liability for the products or services that are paid for with [PayPal's] Services." Even if Plaintiffs had not disclaimed any negligence claim against PayPal vis-à-vis third parties, they fail to allege facts establishing that PayPal owed them a legal duty of care to protect them from Traffic Monsoon and Scoville. Moreover, Plaintiffs seek only economic damages from PayPal, and purely economic damages are unavailable in a negligence claim absent a showing of a "special relationship" among the parties. No such special relationship is alleged or exists between Plaintiffs and PayPal.

Lastly, Plaintiffs' claim for gross negligence must be dismissed because it is well-settled that there is no recognized cause of action for gross negligence under California law.

## FACTUAL BACKGROUND[2]

### I.    PayPal And Its Business

PayPal is a leading technology platform company that enables digital and mobile payments on behalf of customers and merchants worldwide. Compl. ¶ 78. Through its various payment solution products, PayPal enables customers and merchants to connect and transact in new and powerful ways, with access to money anytime and through various platforms and devices. *Id.* ¶ 88. Through a combination of technological innovation, PayPal creates better ways to manage and move money, offers choice and flexibility when sending payments, and provides safer and simpler ways for businesses of various sizes to accept payments. *Id.* ¶¶ 82-89. PayPal also employs a variety of account and review monitoring procedures, which are conducted for a variety of reasons including the detection of high-risk accounts and accounts engaged in fraudulent activity. Compl. ¶¶ 82-83, 88.

[2] All "Ex. __" references are to the exhibits attached to Defendants' Request for Judicial Notice.

## II.    **Traffic Monsoon and Charles Scoville**

In or around October 2014, Scoville created Traffic Monsoon, a limited liability company based in Utah that represented itself as a "pay-to-click" advertising and revenue sharing company. *Id*. ¶¶ 36-37.   Traffic Monsoon's website touted its mission to "provide high quality ad services for affordable prices, and share revenues for a perfect winning combination that will lead to the ultimate success of our customers."   Ex. 5 ¶ 3.   Marketing itself as a successful Internet advertising services company, Traffic Monsoon offered seven different products for purchase to deliver visits, or "clicks," to customers' websites to make the websites appear more popular and to improve search engine results. *Id*. ¶ 4; Compl. ¶¶ 38-39.   One such product was known as the "Banner AdPack" ("AdPack"). Compl. ¶ 39.   Priced at $50 each, AdPacks provided purchasers with 1,000 unique visits to their website, twenty clicks on the purchaser's banner ads, and the opportunity to share in Traffic Monsoon's revenues. *Id*.   In order to share in the company's revenues, an AdPack purchaser was required to affirmatively click on a certain number of banner ads per day. *Id*. ¶ 43.   Once an AdPack earned $55, the purchaser could withdraw that money or buy a new AdPack. *Id*. ¶¶ 41, 44.   Traffic Monsoon's website stated there was no set timeframe for the purchaser's AdPack to reach $55, nor offered any assurance that it would ever in fact reach $55. Ex. 5 ¶ 24.

## III.    **PayPal Unilaterally Limits Traffic Monsoon's PayPal Account**

In or around September 2014, Scoville opened a PayPal account for Traffic Monsoon (the "Account").   Compl. ¶ 129.   Traffic Monsoon, like other PayPal merchants, used PayPal to process payments to and from Traffic Monsoon. *Id.* ¶ 3.   Between September 2014 and early 2016, the Account experienced significant growth and a relatively low amount of chargebacks. *Id*. ¶ 139.   On January 11, 2016, PayPal informed Scoville that it had placed a limitation on the Account based on its reviews of the Account and its concerns about potential risks associated with the growth of Traffic Monsoon. *Id*. ¶¶ 144-146.   On January 12, 2016, Scoville posted a YouTube video for current and prospective purchasers of the AdPacks, stating that he was transitioning away from PayPal.   Scoville failed to disclose PayPal's limitation of the Account. Ex. 5 ¶ 48.   Scoville then moved Traffic Monsoon's payment processing activity to JPMorgan

Chase and other payment processors including Payza, Allied Wallet, and SolidTrustPay. Ex. 3 at 3, 7. PayPal further limited the Account on February 11, 2016, at which time it held approximately $60 million in frozen funds. Ex. 7 ¶ 37; Compl. ¶ 150. As alleged in the Complaint, after imposing the limitation, PayPal established a telephone number through which Traffic Monsoon customers could "address concerns" about Traffic Monsoon. Compl. ¶ 147.

## IV. The SEC Files Suit Against Traffic Monsoon And Scoville

After PayPal unilaterally limited the Account in early 2016, on July 26, 2016, the SEC filed suit against Traffic Monsoon and Scoville in the U.S. District Court for the District of Utah (the "SEC Action"). Ex. 1. The SEC alleged that AdPacks were unregistered investment contracts, and Traffic Monsoon's sale of AdPacks constituted an illegal Ponzi scheme that violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10(b)-(5), among others. Ex. 1. The same day, the SEC filed an ex parte application for a temporary restraining order preventing Scoville's withdrawal of funds from the Account, which was granted the same day. Exs. 2-3. On July 27, 2016, the Utah Court appointed a receiver to gather and manage Scoville's and Traffic Monsoon's assets during the pendency of the SEC Action. Ex. 4. Consistent with the Utah Court's orders, PayPal froze and transferred possession and control of all funds remaining in the Account to the receiver, and assisted the receiver in gaining access to the Account. Exs. 3-4.

On March 28, 2017, the Utah Court granted the SEC's request for preliminary injunction prohibiting Scoville and Traffic Monsoon from conducting business and freezing all of their assets. Exs. 7-8. Through its preliminary injunction order, the Utah Court took "exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated," of Traffic Monsoon and Scoville "that were obtained directly or indirectly from Traffic Monsoon," and froze those assets "until further order." Ex. 8 at 2. The Utah Court further ordered "a stay of all litigation in any court against" Traffic Monsoon or Scoville where the SEC is not a party in the lawsuit and the lawsuit "involves" the frozen assets, enjoined the parties to any such litigation "from taking any action in connection with the lawsuit, including, but not limited to, the issuance

or employment of process," and enjoined any courts presiding over such litigation "from taking or permitting any action in the lawsuit until further order." *Id.* at 3.

## V. The Certified Interlocutory Appeal Before The Tenth Circuit

Acknowledging that "Traffic Monsoon's sale of AdPacks differ[ed] somewhat from the run-of-the-mill Ponzi scheme," the Utah Court certified for interlocutory appeal the issue of whether "Traffic Monsoon's particular business model constituted a Ponzi scheme in light of the contingent nature of the promised returns," as the issue was one of first impression in the circuit. Ex. 7 at 38-39, 44. Indeed, Scoville and Traffic Monsoon assert that Traffic Monsoon operated a legitimate Internet advertising business, not a Ponzi scheme, because it did not promise any particular rate of return for purchases and specifically notified customers that reaching the maximum payout was not guaranteed. *See generally* Ex. 7. The appeal is still pending.

## VI. Unable To Sue Traffic Monsoon Or Scoville, Plaintiffs Sue PayPal Instead

On May 4, 2017, Plaintiffs—both residents of Alberta, Canada[3] —brought the instant suit against PayPal alleging claims of: (i) aiding and abetting fraud; (ii) aiding and abetting breach of fiduciary duty; (iii) negligence; (iv) gross negligence; and (v) violation of Section 25504.1. Plaintiffs contend that through its sale of AdPacks, Traffic Monsoon perpetrated an illegal and fraudulent Ponzi scheme. Compl. ¶¶ 36-77. They allege that, in order to profit from substantial fees, PayPal knowingly and intentionally aided and abetted Traffic Monsoon's alleged Ponzi scheme by allowing the company to open and maintain a PayPal account through which Traffic Monsoon's customers deposited payments for AdPacks. *Id.* ¶¶ 102-120, 129-143. To support these claims, Plaintiffs highlight, among other things: (i) PayPal's decisions to place limitations on the Account; (ii) PayPal's establishment of a telephone number through which Traffic Monsoon customers could "address concerns" about Traffic Monsoon; and (iii) alleged statements made by PayPal to Traffic Monsoon customers after the limitation was in place that the Account was a "scam." *Id.* ¶¶ 144-150.

---

[3] According to filings in the Utah Action, approximately 90%, or 145,000, of Traffic Monsoon's AdPack purchasers reside outside the United States. Ex. 1 ¶ 66.

# ARGUMENT[4]

## I. Plaintiffs Fail To Plead With Particularity That PayPal Aided And Abetted Traffic Monsoon And Scoville's Alleged Fraud

In their first claim, Plaintiffs allege that PayPal aided and abetted Traffic Monsoon and Scoville in committing fraud. Compl. ¶¶ 172-185. According to the Complaint, Traffic Monsoon and Scoville "knowingly defrauded investors because Traffic Monsoon was a Ponzi/pyramid scheme"; "[o]n its website, Traffic Monsoon, through Scoville, [] knowingly misrepresented to AdPack investors that they were purchasing advertising services with the opportunity to share in revenues that Traffic Monsoon received from its advertising business, that their purchases were not investments and that Traffic Monsoon was not a Ponzi/pyramid scheme"; and Scoville "omitted to disclose to AdPack investors that they were purchasing investments, that he was paying existing Traffic Monsoon investors with new Traffic Monsoon investor money, and that Traffic Monsoon was a Ponzi/pyramid scheme." *Id.* ¶¶ 172, 173.

To state claim for aiding and abetting fraud, Plaintiffs must allege facts showing that PayPal (1) had "actual knowledge" of the alleged fraud "in which [it] purportedly participated," and (2) "intentionally [and substantially] assisted" Traffic Monsoon and Scoville to commit the violation. *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144, 1148 (2005); *Emery v. Visa Int'l Servs. Ass'n*, 95 Cal. App. 4th 952, 959 (2002). Claims for aiding and abetting fraud are subject to Rule 9(b)'s heightened pleading requirements. *See McGraw Co. v. Aegis Gen. Ins. Agency, Inc.*, 2016 WL 3745063, at *6 (N.D. Cal. July 13, 2016).

Plaintiffs' claim for aiding and abetting fraud must be dismissed because Plaintiffs do not allege facts showing that PayPal had actual knowledge of the alleged fraud or that it intentionally

---

[4] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Court, however, need not accept as true allegations that contradict documents referred to in the complaint or matters subject to judicial notice, or allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In addition, claims that "sound in fraud" or are predicated on misrepresentation are subject to the heightened pleading standard of Rule 9(b), which requires plaintiffs to allege the "who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." *Id.*

and substantially assisted Scoville and Traffic Monsoon to commit fraud. Far from it, Plaintiffs' allegations show that PayPal acted pursuant to its stated policies to investigate and limit accounts it has reason to believe may violate the terms of PayPal's User Agreement or otherwise present a high level of risk. *See* Compl. ¶¶ 144-45; Ex. 14 § 10.6 "Actions by PayPal – Account Closure, Termination of Service, Limited Account Access; Confidential Criteria."

In addition to the Complaint's failure to plead the elements of aiding and abetting with particularity under Rule 9(b), Plaintiffs' claims that PayPal was somehow "in" on Traffic Monsoon and Scoville's alleged frauds are not plausible in light of PayPal's investigation and limitation of the Account. *See* Compl. ¶¶ 144-150. Plaintiffs' own allegations establish that PayPal's actions were intended to, and did, hinder Scoville's operation of Traffic Monsoon—a fact that is evident by his switch from PayPal to other payment processors. Ex. 7 ¶ 34. Because Plaintiffs have not pleaded a claim that is plausible on its face, it must be dismissed. *Iqbal*, 556 U.S. at 678. Finally, Plaintiffs' aiding and abetting claim must be dismissed because they fail to allege the underlying alleged fraud with the requisite particularity pursuant to Rule 9(b), as they must.

### A. Plaintiffs' Aiding And Abetting Claim Is Implausible

A claim warrants dismissal when a plaintiff's allegations give rise to implausible or unreasonable inferences. *See Iqbal*, 556 U.S. at 678; *Daniels-Hall*, 629 F.3d at 998. Determining whether a plaintiff states a plausible claim is a context-specific task that requires a trial court to draw on "its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Here, according to Plaintiffs' own allegations, PayPal investigated and ultimately limited Traffic Monsoon's account, subsequently created a hotline for concerned Traffic Monsoon customers, and then told some of them that the account was a scam. Compl. ¶¶ 144-150. These allegations are irreconcilable with the notion that PayPal had actual knowledge of the alleged fraud and intentionally and substantially assisted Scoville and Traffic Monsoon to commit the fraud. It simply defies logic that PayPal would knowingly and intentionally act in concert with Traffic Monsoon and Scoville to defraud purchasers of AdPacks, and then take steps to expose and prevent its own fraud. Plaintiffs' aiding and abetting fraud claim should be dismissed for that

reason alone. *See, e.g.*, *Adam v. Silicon Valley Bancshares*, 1994 WL 619300, at *4 (N.D. Cal. Feb. 8, 1994) ("inferences that people acted in an economically irrational manner should not be indulged in without some explanation").

**B.      Plaintiffs Fail To Adequately Plead That PayPal Had Actual Knowledge Of Traffic Monsoon And Scoville's Alleged Fraud**

Under well-settled law, a plaintiff cannot plead "actual knowledge" for purposes of aiding and abetting based on "suspicion and surmise," *Casey*, 127 Cal. App. 4th at 1147, or generalized knowledge of "wrongful or illegal conduct." *McFall v. Stacy and Witbeck, Inc.*, 2016 WL 6248882, at *5 (N.D. Cal. Oct. 26, 2016). Rather, to establish actual knowledge, the plaintiff must allege facts showing that the defendant "reach[ed] a conscious decision to participate in tortious activity for the purpose of assisting another" to perform a specific wrongful act. *Howard v. Super. Ct.*, 2 Cal. App. 4th 745, 749 (1992). In other words, "[a] defendant can be held liable as a cotortfeasor on the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed, and acted *with the intent of facilitating the commission of that [specific] tort.*" *Casey*, 127 Cal. App. 4th at 1146 (citation omitted).

Plaintiffs assert that PayPal actually knew the supposed truth that Scoville operated Traffic Monsoon as a Ponzi scheme and that he fraudulently marketed interests in the scheme as "advertising services" rather than investments (Compl. ¶ 173) based on various factors, including that: (1) PayPal previously banned other pay-to-click businesses operated by Scoville following allegations that they were Ponzi schemes; (2) the Account experienced a high percentage of growth relative to the percentage of chargebacks, and exhibited other activity that is purportedly indicative of a Ponzi scheme; and (3) Traffic Monsoon's website stated that it sold advertising services with "revenue sharing positions," whereas Scoville represented to PayPal that it offered investments.[5] *Id.* ¶¶ 11, 13-15, 145-47, 179.

---

[5] Plaintiffs also allege that sometime after PayPal limited the Account, it set up a telephone number for customers to call to address concerns regarding Traffic Monsoon, and thereafter told some customers that Traffic Monsoon was a scam. Compl. ¶¶ 147-48. Even if these statements indicate that PayPal ultimately suspected Traffic Monsoon to be a scam, they underscore the implausibility of Plaintiffs' theory that PayPal *intended to assist* Scoville to hide Traffic Monsoon's true nature from its customers.

None of these factors are sufficient to show that PayPal had actual knowledge of the specific alleged fraudulent conduct by Scoville and Traffic Monsoon. At most, Plaintiffs' allegations can only establish that PayPal should have suspected or knew "*something* fishy was going on with the account[]," *Casey*, 127 Cal. App. 4th at 1149—which ultimately caused PayPal to investigate the Account, limit the Account and take measures to address impacted Traffic Monsoon customers. *See* Compl. ¶¶ 21, 23, 147. That is not sufficient to state a claim for aiding and abetting fraud. *See McFall*, 2016 WL 6248882, at *6 ("It is not enough to say that Houlihan should have known that 'something fishy' was going on"); *see also Casey*, 127 Cal. App. 4th at 1149 (suspicion of wrongdoing and investigation into the same does not establish actual knowledge).

### 1. Knowledge That Traffic Monsoon Was A Pay-To-Click Business Operated By Scoville Cannot Establish Actual Knowledge That Traffic Monsoon Was A Ponzi Scheme

Plaintiffs' allegations that PayPal knew it had previously banned "similar pay-to-click businesses" operated by Scoville do not establish that PayPal knew Traffic Monsoon was a Ponzi scheme or that Scoville was misrepresenting the nature of Traffic Monsoon to his customers. As to Scoville's prior accounts, Plaintiffs provide no particularized facts that these "similar" businesses were in fact Ponzi schemes, or that PayPal knew them to be such. Similarly, there are no allegations that PayPal knew that Traffic Monsoon's business was a Ponzi scheme.

Even if Plaintiffs did allege that PayPal knew Scoville's prior businesses operated fraudulently (they have not), that still could not establish PayPal's actual knowledge of the underlying fraud alleged in this case. Actual knowledge of a third-party's previous wrongdoing, *or even conviction of securities crimes*, does not establish actual knowledge that the third-party later perpetrated a specific tort. *See Litson-Gruenber v. JP Morgan Chase & Co.*, 2009 U.S. Dist. LEXIS 117749 (N.D. Tex. Dec. 16, 2009). In *Litson-Gruenber*, a Ponzi scheme victim sued JP Morgan Chase for aiding and abetting the Ponzi defendants' breach of fiduciary duties and fraud, alleging that JP Morgan Chase's predecessor in interest permitted the Ponzi defendants to open an account despite knowing that they had been convicted of securities laws violations in multiple states, and permitted more than $100 million to be deposited into the account. *See* Ex. 16 ¶¶ 19,

23, 29.  Nevertheless, the court held that plaintiff failed to allege actual knowledge that the Ponzi defendants were making misrepresentations to the investors or stealing their money via a Ponzi scheme, and was "at best, merely a story of suspicious activity."  *Litson-Gruenber*, 2009 U.S. Dist. LEXIS 117749, at *8.  Similar to *Litson-Gruenber*, Plaintiffs' allegations that Scoville was previously accused of operating businesses engaged in fraudulent activity cannot establish PayPal's knowledge of Scoville's allegedly fraudulent operation of Traffic Monsoon.

Finally, Plaintiffs cannot allege facts showing that PayPal actually knew that Traffic Monsoon's particular business model constituted a Ponzi scheme because even now, it is unsettled as a matter of law whether in fact Traffic Monsoon operated as a Ponzi scheme.  The only court to have considered the issue is the U.S. District Court for the District of Utah in the SEC Action, and that court certified the issue for interlocutory appeal to the Tenth Circuit.  As the Utah Court recognized, Traffic Monsoon had "unique aspects" that "differentiate[d] it from other Ponzi schemes."  Ex. 7 at 35 n.15.  Among Traffic Monsoon's key differentiating features was that, unlike typical Ponzi schemes which promise high rates of return, Scoville represented to all AdPack purchasers that receiving any return was contingent on the profitability of Traffic Monsoon.  *Id.* at 35-37.  The Utah Court concluded that whether "Traffic Monsoon's particular business model constitutes a Ponzi scheme in light of the contingent nature of the promised returns" was a "question of law as to which there is substantial ground for difference of opinion."  *Id.* at 44.  A district court is significantly better suited than PayPal to determine whether a business's particular characteristics qualifies it as a Ponzi scheme, and yet it recognized that the determination is not a clear cut one.  This further undermines the notion that PayPal had "actual knowledge" that Scoville and Traffic Monsoon were operating a Ponzi scheme.  Plaintiffs have not, nor can they, plead facts that would establish that PayPal knew that Scoville and Traffic Monsoon were operating a Ponzi scheme, where a court with far more information available to it to inform the issue expressed equivocation around the ultimate legal conclusion.

### 2. Knowledge Of Unusual Account Activity Cannot Establish Actual Knowledge That Traffic Monsoon Was A Ponzi Scheme

Plaintiffs' allegations related to Traffic Monsoon's supposedly unusual account activity,

including that the Account contained commingled funds, experienced rapid growth, and had few chargebacks (Compl. ¶¶ 139, 179), also fail to establish actual knowledge of an underlying fraud. Knowledge of unusual account activity does not establish knowledge that the Account was used to perpetrate a specific offense.

For example, in *Casey*, a bankruptcy trustee sued several banks for aiding and abetting a scheme perpetrated by the debtor corporation's fiduciaries to divert $36 million in investor funds. 127 Cal. App. 4th at 1141, 1149. The trustee alleged the banks knew about the fraudulent scheme because they knew that the fiduciaries used invalid tax identification numbers to open numerous bank accounts, which were used to funnel $6 million in cash in unmarked duffel bags from the banks' vaults to their personal bank accounts in violation of banking regulations, monetary restrictions on the face of checks, and the banks' own internal policies and procedures. *Id.* at 1142, 1149. But these allegations of "suspicious account activities—even money laundering" did not amount to actual knowledge—*i.e.*, that the banks knew that the "[f]iduciaries were stealing corporate funds" in breach of their fiduciary duties. *Id.* at 1151. Here, Plaintiffs' claims are much less compelling than the legally deficient claims in *Casey*. Other than stating their conclusion that the Account operated as a Ponzi scheme in violation of PayPal's Acceptable Use Policy (*see* Compl. ¶¶ 13, 180), Plaintiffs have not alleged any facts comparable to the facts alleged in *Casey* that suggest PayPal knew that particular Account transactions violated PayPal's policies or procedures.

Other courts have likewise refused to infer actual knowledge of a specific underlying offense from knowledge of account activity that, in hindsight, could have raised suspicions of an improper use of the account. *See, e.g.*, *Chance World Trading E.C. v. Heritage Bank of Commerce*, 438 F. Supp. 2d 1081, 1085 (N.D. Cal. 2005) ("Even if the transfers out of [the checking account] did not comport with Heritage Bank rules or California corporate law, that alone is insufficient to show that Heritage Bank was aware of [the primary tortfeasor's] misuse of funds."); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 426 (S.D.N.Y. 2007) (bank's alleged knowledge that account transactions were "inconsistent with [the underlying defendant's] alleged business" did not establish actual knowledge of an underlying fraud); *In re Sharp Int'l Corp.*, 281

B.R. 506 (Bankr. E.D.N.Y. 2002) (lender's alleged knowledge that principals were fraudulently inflating the company's receivables was insufficient to plead actual knowledge of their diversion of company money). As in each of these cases, Plaintiffs' allegations that PayPal knew Traffic Monsoon's account activity could be consistent with Ponzi activity do not establish actual knowledge that Scoville was operating the account as a Ponzi scheme or misrepresenting the specific fraudulent nature of the business to his customers.

In any event, the claim that PayPal knowingly and intentionally assisted Scoville and Traffic Monsoon to commit fraud is also inconsistent with the allegations in the Complaint that PayPal's internal controls and anti-fraud detection procedures were inadequate to detect the risk posed by the Account. *See, e.g.*, Compl. ¶ 161 ("Such flagrant inadequacies and/or breakdowns in PayPal's internal controls and communications between various PayPal agents and/or departments played a key role in enabling the Traffic Monsoon scheme"). A breakdown in internal controls and failure to detect and prevent a fraud do not establish, and are logically inconsistent with, "actual knowledge" of the fraud. *See, e.g.*, *Emery*, 95 Cal. App. 4th at 963, 965 (holding that plaintiffs failed to establish aiding and abetting where "[t]he worst that can be said is [the defendant] did not take more aggressive corrective steps" to prevent the target offense); *In re Agape Litig.*, 773 F. Supp. 2d 298, 320 (E.D.N.Y. 2011) (finding that bank's decision to shut down its High-Risk Compliance Group, while potentially "an unwise business decision," did not raise an inference that the bank "act[ed] with a culpable state of mind" for purposes of establishing actual knowledge).

### 3. Knowledge That AdPacks Were Variously Called "Investments" And "Revenue Sharing Positions" Cannot Establish Actual Knowledge That Traffic Monsoon Was A Ponzi Scheme

Plaintiffs allege that PayPal knew that Scoville supposedly misrepresented AdPacks as "advertising services" with "revenue sharing positions" when in reality they were "investments" because it "reviewed Traffic Monsoon's website and information provided by Scoville when Scoville applied for a merchant account for Traffic Monsoon." Compl. ¶¶ 37, 48, 179. However, as Plaintiffs acknowledge, Traffic Monsoon offered seven products for sale, only one of which Plaintiffs allege was an investment. *See id.* ¶ 39. At most, Plaintiffs have pleaded that PayPal

OHSUSA:767353230.2

was aware of a potential discrepancy in how Scoville described just one of Traffic Monsoon's products to PayPal and to his customers. Allegations of knowledge of inconsistent statements are not tantamount to actual knowledge of which (if any) of the statements is correct. *See In re Agape Litig.*, 773 F. Supp. 2d at 310-11 (allegations that a bank had actual knowledge of fraud because "the account activity . . . was inconsistent with [the underlying tortfeasor's] representations" about the business's operations "at most indicate only constructive knowledge of a fraudulent scheme") (citation omitted).

### C. Plaintiffs Fail To Adequately Plead That PayPal Intentionally And Substantially Assisted Traffic Monsoon And Scoville's Alleged Fraud

Plaintiffs also fail to allege with particularity what PayPal supposedly did to "intentionally and substantially assist" Scoville to operate Traffic Monsoon as a Ponzi scheme. The allegation that PayPal "allowed Scoville to open an account for Traffic Monsoon and use its services," even though it allegedly knew that Traffic Monsoon was a Ponzi scheme (Compl. ¶ 180), is hardly particularized. The allegation that PayPal "cloaked" Traffic Monsoon "with a false air of legitimacy" because Traffic Monsoon displayed PayPal's name on its website and PayPal represents that it monitors accounts for fraud (*id.*), fares no better.[6] These two allegations merely show that PayPal operated in its usual manner as a payment processor, and are a far cry from properly pleading intentional or "substantial assistance" to a Ponzi scheme. *Casey*, 127 Cal. App. 4th at 1145 (in California, "ordinary business transactions" do not amount to substantial assistance unless the defendant "actually knew those transactions were assisting the customer in committing a specific tort" and consciously decided to assist.); *Howard*, 2 Cal. App. 4th at 749.

Plaintiffs seek to bolter these allegations by claiming that PayPal sought to help Scoville operate a Ponzi scheme so it could earn a profit. Compl. ¶ 183. They allege that the size of

---

[6] PayPal's alleged conduct fell far short of conduct that provides the primary tortfeasor "with a false air of legitimacy." *Cf. Ray v. BlueHippo Funding, LLC*, 2008 WL 1995113, at *4 (N.D. Cal. May 6, 2008) (finding defendant provided BlueHippo with an "aura of respectability" by putting a direct link to BlueHippo's website on its website with an assurance that BlueHippo was an authorized reseller of its products); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1132 (C.D. Cal. 2003) (finding that defendant "created a sense of security" in investors in a Ponzi scheme by representing that investor accounts were audited and by "covering for" the Ponzi defendant when he did not make payments on time and "calming potentially irate investors"). Plaintiffs do not allege anything akin to these allegations in their Complaint.

1   Traffic Monsoon's account was a "radical departure from PayPal's business as a payment

2   processor." *Id.* ¶ 180. But that allegation is nonsensical. PayPal is a large and sophisticated

3   company that is equipped to handle small and large accounts. The assertion that PayPal "profited

4   greatly from the Traffic Monsoon scheme" by earning transaction fees and interest (*id.* ¶ 17),

5   alleges nothing more than a "generalized motive, one which could be imputed to any publicly-

6   owned, for-profit endeavor." *Rosner*, 528 F. Supp. 2d at 426 (citation omitted).

7        Plaintiffs finally allege that PayPal assisted Scoville to operate a Ponzi scheme by first

8   suspending account withdrawals, but not deposits, and then temporarily lifting the freeze before

9   the Utah Court froze the account.[7] Compl. ¶ 180. But the fact that PayPal took action against

10  Scoville and Traffic Monsoon *undercuts*, rather than support, the inference that Plaintiffs ask the

11  Court to make. Moreover, according to the Complaint, it was a breakdown in internal controls

12  and anti-fraud detection systems that "enabled" the alleged Traffic Monsoon "scheme"—not an

13  "intent" on PayPal's part to assist the alleged scheme. *See id.* ¶¶ 158-161.

14       Moreover, as soon as PayPal limited Traffic Monsoon's account, Scoville engaged

15  JPMorgan Chase and other payment processors including Payza, Allied Wallet, and

16  SolidTrustPay, to process payments for Traffic Monsoon. Ex. 7 ¶ 34 ("With the introduction of

17  these new payment processors, AdPack transactions began to rise again."). The ease at which

18  Traffic Monsoon switched from PayPal to other payment processors demonstrates that PayPal

19  was never a crucial component to Traffic Monsoon's operation. Defendants whose services are

20  easily replaced do not provide substantial assistance and cannot be found liable for aiding and

21  abetting the underlying tort. *Compare Mendelsohn v. Capital Underwriters, Inc.*, 490 F. Supp.

22  1069, 1084 (N.D. Cal. 1979) (plaintiff failed to allege substantial assistance because "had [the

23  accountant] quit upon learning [of the underlying defendant's] irregular financial practices, [the

24  underlying defendant] could simply have hired a less astute accountant or bookkeeper"), *with*

25  *Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 1526394, at *5 (N.D. Cal. April 15, 2010)

---

[7] PayPal placed a 180 day hold on funds in the Account consistent with the terms of the User
Agreement applicable to U.S. users such as Traffic Monsoon. *See* Ex. 15 (PayPal U.S. User
Agreement, "Actions We May Take If You Engage In Any Restricted Activities"). Such a hold,
in line with the established terms of PayPal's User Agreement, is not consistent with an intent to
defraud.

("The fact that Mr. Wise had tried at least three other U.S. banks, all of which declined his business apparently due to its suspicions nature, lends further support for the notion that WaMu/JPMorgan's services played a critical part in the maintenance of the Ponzi scheme.").

### D. Plaintiffs Fail To Plead The Alleged Underlying Fraud With Particularity

Finally, Plaintiffs' aiding and abetting fraud claim fails because they have not alleged specific facts showing that they actually relied on any alleged misrepresentation or omission by Traffic Monsoon or Scoville. *See Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996) (actual reliance is an element of fraud). "[T]he mere assertion of 'reliance' is insufficient. The plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim of actual reliance." *Baltazar v. Apple, Inc.*, 2011 WL 588209, at *3 (N.D. Cal. Feb. 10, 2011) (quoting *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App 4th 513, 519 (2004)).

Here, Plaintiffs merely assert in conclusory fashion that they "and members of the proposed Class relied to their detriment on Traffic Monsoon and Scoville's misrepresentations and omissions when purchasing AdPacks." Compl. ¶ 177. That boilerplate allegation would not suffice even under Rule 8(a), much less Rule 9(b). *See Iqbal*, 556 U.S. at 678. Nowhere in the Complaint do Plaintiffs identify the specific representations they purportedly relied upon or found material or allege when they actually reviewed those representations, if ever, as required by Rule 9(b).[8] Plaintiffs' failure to allege actual reliance, and hence the underlying fraud, with the requisite particularity, requires dismissal of their derivative claim for aiding and abetting fraud. *See Meram v. Citizens Title & Trust, Inc.*, 2011 WL 11463, at *5 (S.D. Cal. Jan. 3, 2011).

### II. Plaintiffs' Claim For Aiding And Abetting Breach Of Fiduciary Duty Fails

Plaintiffs' claim for aiding and abetting breach of fiduciary duty fails for the same reasons articulated above. Because the aiding and abetting claim sounds in fraud, it must be pled with

---

[8] *See, e.g., Janney v. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013) ("Rule 9(b) requires that the plaintiff(s) identify specific advertisements and promotional materials [and] allege when the plaintiff(s) were exposed to the materials"); *Kearns*, 567 F.3d at 1226 ("Nowhere in the [complaint] does Kearns specify . . . when he was exposed to [the representations] or which ones he found material. Kearns also failed to specify which sales material he relied upon in making his decision to buy . . . . Accordingly, these pleadings do not satisfy the requirement of Rule 9(b)."); *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1080 (N.D. Cal. 2012) ("nowhere does Plaintiff allege when, where, or how she was exposed to . . . advertising, or marketing prior to purchase.").

particularity subject to Rule 9(b). *See, e.g.*, *Siegal v. Gamble*, 2016 WL 1085787, at \*9 (N.D. Cal. Mar. 21, 2016) (applying Rule 9(b) to claim for aiding and abetting breach of fiduciary duty, where "fraud is the gravamen" of the claim); *In re Ditech Networks, Inc. Derivative Litig.*, 2008 WL 820705, at \*6 (N.D. Cal. Mar. 26, 2008) (same).

Plaintiffs reincorporate the same allegations and allege that PayPal knew that Scoville breached fiduciary duties to Traffic Monsoon's customers based on its knowledge of certain account activities including the commingling of funds, statements on Traffic Monsoon's website that it offered advertising and revenue sharing services rather than investments, and Scoville's failure to disclose to customers that PayPal had shut down several of his prior accounts. Compl. ¶ 196. These allegations are nearly identical to the allegations made in support of Plaintiffs' aiding and abetting fraud claim, and they are no more adequate to plead either actual knowledge or intentional and substantial assistance of the alleged breach of fiduciary duty than they are to plead the same required elements of fraud. In short, both counts rely on the false premise that PayPal should bear responsibility for Scoville's alleged frauds and breaches of fiduciary duty simply because, prior to investigating and limiting Traffic Monsoon's account, PayPal allowed Scoville to do business with it. There is no support in California or federal case law for that extreme position.

Plaintiffs' aiding and abetting breach of fiduciary duty claim fails for an additional reason. As discussed above, "a defendant can only aid and abet another's tort if the defendant knows what 'that tort' is." *Casey*, 127 Cal. App. 4th at 1146 (citation omitted). This means that in cases involving aiding and abetting a breach of fiduciary duty, the plaintiff must plead specific facts showing that the defendant knew that the alleged primary wrongdoer *owed a fiduciary duty to the plaintiff*. But Plaintiffs plead no facts establishing that PayPal knew that Scoville owed fiduciary duties to purchasers of AdPacks. They instead make the conclusory allegation that "PayPal was aware that Traffic Monsoon and Scoville were fiduciaries" because PayPal supposedly knew that purchasers of AdPacks were "investors." Compl. ¶ 195. However, Plaintiffs have not alleged any facts to show that PayPal knew that Traffic Monsoon's AdPack product constituted an "investment" in a security, or that purchasers of AdPacks were in fact "investors" of securities,

and thus there is no basis to conclude that PayPal had actual knowledge of Traffic Monsoon's alleged fiduciary duties to AdPack purchasers.

## III.    Plaintiffs' Claim Under Cal. Corp. § 25504.1 Fails

Under section 25504.1 of the California Corporations Code, any person who "materially assists" in a violation of section 25401 of the Code, "with intent to deceive or defraud, is jointly and severally liable with any other person liable" for the violation.  Section 25401, in turn, makes it unlawful "for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading."  Because a claim under section 25504.1 sounds in fraud, it must be alleged with particularity pursuant to Rule 9(b).  *See Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *16 (N.D. Cal. Sept. 14, 1998).

Plaintiffs' section 25504.1 claim fails because they fail to allege that Traffic Monsoon offered or sold securities by means of false or misleading statements "in this state," that PayPal "materially assisted" Traffic Monsoon in selling or offering to sell securities by means of false and misleading statement, or that PayPal did so with "an intent to deceive or defraud."

### A.    Plaintiffs Fail To Allege An Offer Or Sale Of A Security In California

"[I]n section 25401 the [California] Legislature expressly limited the scope of the prohibition of false or misleading statements in an offer to buy or sell.  That section makes it 'unlawful for any person to offer or sell a security *in this state*.'  *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1054 (1999); *see also MTC Elec. Techs. Co. v. Leung*, 876 F. Supp. 1143, 1147 (C.D. Cal. 1995) ("In order to have a valid cause of action under . . . § 25401 MTC must allege that there was a sale or purchase of stock in California").  An offer or sale of a security is made "in this state" if: (1) an offer is made from California to a person outside the state; (2) an offer is made from outside California to a person inside the state; (3) a contract of sale is formed by an acceptance directed to a person in California; or (4) the certificate or other evidence of the security is directed to a purchaser inside California and both the purchaser and the

seller are domiciled in California.  Cal. Corp. Code § 25008(a)-(b).

Plaintiffs and the other members of the alleged class cannot satisfy the "in this state" requirement, as they admittedly all "resided outside the United States at the time of their investment in Traffic Monson," and Traffic Monsoon is a Utah limited liability company that promoted its AdPack "investments" from Utah.  Compl. ¶¶ 36, 163; Ex. 7 at 28.  Accordingly, Plaintiffs cannot establish a primary violation of section 25401, and their section 25504.1 claim must be dismissed.  *See Wallack v. Idexx Labs., Inc.*, 2013 WL 5206190, at * 12 (S.D. Cal. Sept. 12, 2013) ("Since Plaintiff has failed to adequate allege the underlying section 25401 claim, his claim as to section 25504.1 also fails as to all Defendants.").

### B.  Plaintiffs Fail To Allege Facts Showing That PayPal "Materially Assisted" Traffic Monsoon's Alleged Violation Of Section 25401

Plaintiffs' section 25504.1 claim further fails because they do not allege any facts showing that PayPal "materiality assisted" Traffic Monsoon in its alleged violation of section 25401.  As the California Court of Appeal has emphasized, "[t]he plain language of section 25504.1 makes clear that a person must have materially assisted *in* the securities law violation." *Arei II Cases*, 216 Cal. App. 4th 1004, 1014 (2013) (emphasis in original).  "Therefore, for purposes of section 25504.1, it is not enough that a person provided material assistance in a larger scheme to defraud if that person had no role or involvement in the part of the scheme that constituted a violation of the securities laws." *Id.*  Just knowing or having "reason to know the facts constituting the violation" is also not enough for liability under section 25504.1. *Id.* at 1016.

Here, as in *Arei II*, the alleged primary violation is selling or offering to sell a security by means of false and misleading statements in violation of section 25401. *Id.* at 1015.  Plaintiffs therefore were required to allege facts demonstrating how PayPal "assisted in the act of selling or offering to sell securities by means of false and misleading statements." *Id.* at 1014-15; *see also Calderon v. Total Wealth Mgmt., Inc.*, 2016 WL 898823, at *3 (S.D. Cal. Mar. 9, 2016) ("'Allegations demonstrating how the defendant assisted in the act of selling or offering to sell securities by means of false and misleading statements' are required.") (citation omitted).  But, like the plaintiffs in *Arei II*, Plaintiffs have not alleged any facts showing that PayPal "had any

involvement in selling or offering to sell" securities to Plaintiffs "by false and misleading statements." 216 Cal. App. 4th at 1018-19. Indeed, PayPal is not alleged to have had any communications with Plaintiffs, let alone to have made false or misleading statements to them. Nor is PayPal alleged to have played any role in the preparation, drafting, or distribution of any alleged false or misleading statement made to Plaintiffs. *Id.* at 1019.

Rather, PayPal is alleged to have assisted Traffic Monsoon's purported Ponzi scheme by allowing Traffic Monsoon to open and maintain a PayPal account through which it accepted payments for AdPacks. *See* Compl. ¶¶ 180, 228. However, Traffic Monsoon's creation and use of a PayPal account to transfer and hold proceeds from the sale of AdPacks is not a violation of section 25401. Section 25401 is only violated through the sale or offer to sell a security by means of false and misleading statements. And Plaintiffs do not allege that PayPal played any role in the preparation or maintenance of Traffic Monsoon's website, which contained the allegedly false and misleading statements and through which AdPacks were offered and sold. *See* Compl. ¶¶ 37-49, 69 ("Traffic Monsoon offered and sold the AdPacks through its website.").

### C. Plaintiffs Fail To Allege Facts Showing That PayPal Acted With An "Intent To Deceive Or Defraud" Plaintiffs

Finally, Plaintiffs' section 25504.1 claim fails because they do not allege any facts showing that PayPal materially assisted Traffic Monson with an "intent to deceive or defraud." Cal. Corp. Code § 25504.1. "Intent to defraud is defined as the intent to induce reliance on a knowing misrepresentation or omission." *Schaffer Family Investors, LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1045 (C.D. Cal. 2015) (citation omitted). The Complaint, however, does not allege any facts to show that PayPal intended to induce Plaintiffs to rely on representations known to be false or misleading. It merely alleges in utterly conclusory fashion that "PayPal materially aided, with intent to deceive or defraud, in the acts or transactions constituting violations" of section 25401. Compl. ¶ 227. That boilerplate allegation is nothing but a "formulaic recitation of a cause of action's elements" that, even under the lenient pleading standards of Rule 8(a), "will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Kainos*, 1998 WL 2016634, at *16 (dismissing section 25504.1 claim because plaintiff 'failed to provide with

requisite particularity allegations of fraudulent intent on the part defendants").[9]

## IV.   Plaintiffs' Claim For Negligence Fails

Plaintiffs' fourth claim for negligence fails because Plaintiffs expressly released PayPal from liability for the injuries they suffered.  Even if that was not the case, the claim still fails because it does not allege sufficient facts showing that PayPal owed Plaintiffs a legal duty to use due care in connection with Traffic Monsoon, and it is barred by the economic loss rule.

### A.   Plaintiffs' Negligence Claim Is Barred By The PayPal User Agreement

A valid written release may exculpate a tortfeasor from future negligence or misconduct. *See Bennett v. U.S. Cycling Fed'n*, 193 Cal. App. 3d 1485, 1490 (1987).  Although a liability release "must be clear, unambiguous, and explicit in expressing the intent of the parties," it need not achieve perfection. *Paralift, Inc. v. Super. Ct.*, 23 Cal. App. 4th 748, 755 (1993).  Rather, when "read as a whole, [it] must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement." *Ferrell v. S. Nev. Off-Road Enthusiasts, Ltd.*, 147 Cal. App. 3d 309, 318 (1983).  Moreover, the express language of the release determines its scope, but not every possible specific act needs to be spelled out in the agreement. *See Benedek v. PLC Santa Monica, LLC*, 104 Cal. App. 4th 1351, 1356 (2002) ("A release may negate the duty element of a negligence action.").

Here, the PayPal User Agreement governing Plaintiffs' use of the PayPal services, which Plaintiffs necessarily accepted as a condition of becoming members of PayPal, expressly limits the scope of PayPal's duties and obligations vis-à-vis its users, and contains a clear and unambiguous release of liability in PayPal's favor for damages or losses resulting directly or indirectly from the content, actions or inactions of third parties like Traffic Monsoon and Scoville:

> **1.1 PayPal is Only a Payment Service Provider.**  PayPal helps you make payments to and accept payments from third parties. PayPal is an independent contractor for all purposes, except that PayPal acts as your agent with respect to the custody of your funds.

---

[9] Indeed, as discussed above, Plaintiffs' own allegations refute the notion that PayPal intended to defraud alleged AdPack investors.  The Complaint alleges that PayPal limited Traffic Monsoon's account, established a telephone number for Traffic Monsoon customers to call to "address concerns," and told some of them that Traffic Monsoon was a "scam."  Compl. ¶¶ 144-150. These actions are directly contrary with an "intent to defraud."

PayPal does not have control of or liability for the products or services that are paid for with the Services. We do not guarantee the identity of any User or ensure that a buyer or a Seller will complete a transaction.

\* \* \*

**2.5 Third Party Permissions.** If you grant express permission to a third party to take specific actions on your behalf, or access particular information about your Account, you acknowledge that . . . You will not hold PayPal responsible for, and will indemnify PayPal from, any liability arising from the actions or inactions of the third party in connection with the permissions you grant.

\* \* \*

**15.1 Limitations of Liability.** IN NO EVENT SHALL WE . . . BE LIABLE FOR LOST PROFITS OR ANY SPECIAL, INCIDENTAL, INDIRECT, OR CONSEQUENTIAL, OR PUNITIVE DAMAGES . . . ARISING OUT OF OR IN CONNECTION WITH OUR WEBSITE, THE SERVICES, OR THIS AGREEMENT (HOWEVER ARISING, INCLUDING NEGLIGENCE), UNLESS AND TO THE EXTENT PROHIBITED BY LAW. . . . IN ADDITION . . . [PAYPAL IS] NOT LIABLE, AND YOU AGREE NOT TO HOLD [PAYPAL] RESPONSIBLE, FOR ANY DAMAGES OR LOSSES (INCLUDING, BUT NOT LIMITED TO, LOSS OF MONEY, GOODWILL, OR REPUTATION, PROFITS, OR OTHER INTANGIBLE LOSSES OR ANY SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES) RESULTING DIRECTLY OR INDIRECTLY FROM: . . . (E) THE CONTENT, ACTIONS, OR INACTIONS OF THIRD PARTIES[.]

Ex. 14. The above provisions are clear, unambiguous and explicit, and routinely enforced to dismiss negligence claims. *See, e.g.*, *Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, at *5 (N.D. Cal. Dec. 2, 2015) ("Applying section 10 of YouTube's Terms of Service, the court dismisses plaintiff's [] cause of action [for negligence]").

     **B.**       **Even If Plaintiffs Did Not Waive Their Right To A Claim For Negligence, PayPal Did Not Owe Them A Duty Of Care Vis-à-vis Traffic Monsoon And Scoville**

"The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Paz v. State*, 22 Cal. 4th 550, 559 (2000). Courts "invoke[] the concept of duty to limit generally the otherwise potentially infinite liability which would follow from every negligent act." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 397 (1992) (internal quotation marks and citation omitted). As a result, courts should only create a duty where "clearly supported by public policy." *Rowland v. Christian*, 69 Cal. 2d 108, 112 (1968). Plaintiffs here fail to establish that PayPal owed them a legal duty a care vis-à-vis Traffic Monsoon and Scoville for two reasons.

     First, as noted above, PayPal is a payment service provider and as such has no legal duty

of care to supervise account activity, inquire into the purpose for which funds are being used, police accounts for wrongdoing or irregular transactions, disclose a customers' unusual banking activity, prevent commingling of assets in fiduciary accounts, or conduct an investigation of possible misappropriation of funds. Case law in the analogous depositor-bank context confirm this. *See Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537-41 (1998); *see also Ghlachi v. U.S. Bank, N.A.*, 2015 WL 12655411, at *8 (C.D. Cal. Apr. 29, 2015) (banks have no "duty to supervise account activity or inquire into the purpose for which the funds are being used," or "to police their fiduciary accounts," and "are not liable for a trustee's misappropriation of funds"). PayPal owed no such duties to Plaintiffs with respect to Traffic Monsoon and Scoville.

Second, the Complaint pleads no facts sufficient to establish the existence of such a duty, even assuming the issue of whether PayPal had a legal duty to Plaintiffs was not already foreclosed by the case law governing a bank's duties to its depositors. In determining whether policy considerations weigh in favor of imposing a legal duty of care, courts balance the *Rowland* factors: (1) the foreseeability of harm to the plaintiff; (2) the degree of certainty that the plaintiff suffered injury; (3) the closeness of the connection between the defendant's conduct and the injury suffered; (4) the moral blame attached to the defendant's conduct; (5) the policy of preventing future harm; (6) the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach; and (7) the availability, cost, and prevalence of insurance for the risk involved. 69 Cal. 2d at 113.

Here, the Complaint sets forth no facts upon which this Court can impose a duty on PayPal to protect Plaintiffs from Traffic Monsoon and Scoville, and the *Rowland* factors dictate the opposite result. First, the harm to Plaintiffs as a result of Traffic Monsoon's alleged Ponzi scheme cannot be said to have been sufficiently foreseeable by PayPal where the issue of whether the business of Traffic Monsoon even legally constitutes a Ponzi scheme is still up for debate, as recognized by the Utah Court's certification of an interlocutory appeal to the Tenth Circuit. Second, while Plaintiffs have allegedly suffered economic injury, the degree to which they have is uncertain given Traffic Monsoon and Scoville's assets have been frozen by the Utah Court, are controlled by the receiver, and have yet to be distributed to alleged victims of the Ponzi scheme.

Third, the connection between PayPal's conduct and Plaintiffs' injury is remote. As articulated above, PayPal had no involvement in Traffic Monsoon's alleged Ponzi scheme or business. PayPal neither promoted Traffic Monsoon nor gave it an air of legitimacy, but instead, acted only to process payments to and from Traffic Monsoon—a service that it markets and provides widely to other merchants as well around the world. Indeed, as discussed above, the PayPal User Agreement—which Plaintiffs agreed to—makes clear that PayPal merely acts as a "custodian" of user funds and "does not have control of or liability for the products or services that are paid for with [PayPal's] services."

Fourth, the moral blame attached to PayPal's alleged conduct is minimal; rather, the moral blame for any financial losses suffered by Plaintiffs lies entirely with Scoville and Traffic Monsoon. Fifth, the "overall policy of preventing future harm is ordinarily served, in tort law, by imposing the costs of negligent conduct upon those responsible," *Kesner v. Super. Ct.*, 1 Cal. 5th 1132, 1150 (2016) (citation omitted), and in the present factual scenario, Scoville and Traffic Monsoon, the alleged perpetrators of the Ponzi scheme, not PayPal, are the responsible parties. Finally, imposing a duty on PayPal and other online payment service providers to intensely monitor, investigate and curb all alleged fraud when no obvious indicators of fraud exist would be extensive, and in any event, those extra costs will be borne by the consumer. *See, e.g.*, *Software Design & Application v. Hoefer & Arnett*, 49 Cal. App. 4th 472, 483 (1996) ("Scrutiny into the financial and business affairs of prospective customers for the express purpose of ferreting out the faithless fiduciary and divining illegal conduits for embezzled funds would be intrusive for the citizenry and add to the cost of financial transactions, both in terms of time and money.").

## C. Plaintiffs' Negligence Claim Is Also Barred By The Economic Loss Rule

"[P]laintiffs may recover in tort for physical injury to person or property, but not for purely economic losses." *S.F. Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1327 (1995). Since Plaintiffs' alleged damages are economic (Compl. ¶¶ 185, 203, 211, 219, 229), the economic loss doctrine bars their negligence claim. *See Spencer v. DHI Mortg. Co.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009).

California courts recognize an exception to this doctrine only if a "special relationship"

exists among the parties. *ExxonMobil Oil Corp. v. Nicoletti Oil, Inc.*, 713 F. Supp. 2d 1105, 1113 (E.D. Cal. 2010). To determine whether a special relationship exists, the California Supreme Court in *J'Aire Corp. v. Gregory* instructed courts to examine six factors: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." 24 Cal. 3d 799, 804 (1979). "In order to survive a motion to dismiss, a claim for negligence based on a special relationship, a claimant must allege facts sufficient to support the existence of a special relationship." *ExxonMobil*, 713 F. Supp. 2d at 1113.

Plaintiffs here allege no such facts. Indeed, Plaintiffs have failed to allege a relationship between PayPal and Plaintiffs that goes beyond those envisioned by everyday transactions. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 968-69 (S.D. Cal. 2014) (no "special relationship" beyond "those envisioned in everyday consumer transactions, and therefore, negligence is the wrong legal theory on which to pursue recovery for Plaintiffs' economic losses"). Moreover, for the reasons discussed above, all of the *J'Aire* factors weigh against a finding of a "special relationship" between PayPal and Plaintiffs.

## V.    Plaintiffs' Claim For Gross Negligence Is Not Cognizable

Plaintiffs' claim for gross negligence fails because "California does not recognize a distinct common law cause of action for gross negligence apart from negligence." *Jimenez v. 24 Hour Fitness USA, Inc.*, 237 Cal. App. 4th 546, 552 n.3 (2015); *Grappo v. McMills*, 11 Cal. App. 5th 996, 1014 (2017); *Architectural Res. Grp., Inc. v. HKS, Inc.*, 2013 WL 568921, at *5 (N.D. Cal. Feb. 13, 2013) (dismissing gross negligence claim because "California courts do not recognize a separate cause of action for gross negligence").

## CONCLUSION

For these reasons, the Complaint should be dismissed.

Dated: September 7, 2017      ORRICK, HERRINGTON & SUTCLIFFE LLP

_____

*/s/ James N. Kramer*

James N. Kramer

Attorneys for Defendants PayPal, Inc. and PayPal Holdings, Inc.

OHSUSA:767353230.2