ADAM WOLF (SBN 215914)
**PEIFFER ROSCA WOLF ABDULLAH
CARR & KANE, A PROFESSIONAL LAW
CORPORATION**
4 Embarcadero Center
Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-3545
Fax: (415) 402-0058
Email: awolf@prwlegal.com

*Counsel for Plaintiffs and the proposed class*
*[additional counsel listed in signature block]*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **KINGSLEY EZEUDE and CHUKWUKA OBI on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**PAYPAL, INC. AND PAYPAL HOLDINGS, INC.**<br><br>**Defendants.** | ) Case No. 5:17-cv-02558-LHK<br>) CLASS ACTION<br>)<br>) **OPPOSITION TO DEFENDANTS'**<br>) **MOTION TO DISMISS**<br>)<br>)<br>)<br>)<br>) Date: January 4, 2018<br>) Time: 1:30 p.m.<br>) Judge: Honorable Lucy H. Koh<br>) Courtroom: 8 |

## Summary of Issues Presented

1. Are the detailed allegations of the *Ezeude* complaint sufficient to survive a motion to dismiss after all inferences are drawn in favor of Plaintiffs?

2. Have Plaintiffs adequately alleged generally that Defendants had actual knowledge of the fraud perpetrated by Scoville and Traffic Monsoon?

3. Have Plaintiffs adequately alleged that Defendants substantially assisted Scoville and Traffic Monsoon in the perpetration of their fraud?

4. Have Plaintiffs adequately alleged generally that Defendants had actual knowledge of the fiduciary duty Scoville and Traffic Monsoon owed to Plaintiffs and Traffic Monsoon investors and the breach of that duty?

5. Have Plaintiffs adequately alleged that Defendants substantially assisted Scoville and Traffic Monsoon breach the fiduciary duties they owed to Traffic Monsoon investors?

6. Have Plaintiffs adequately alleged the fraud perpetrated by Scoville and Traffic Monsoon?

7. Have Plaintiffs adequately alleged claims under Cal. Corp. § 25504.1?

8. Have Plaintiffs adequately alleged claims for negligence?

9. Have Plaintiffs adequately alleged claims for gross negligence?

Opposition to Defendants' Motion to Dismiss
Case No. 5:17-cv-02558

# <u>Table of Contents</u>

I.    Introduction ........................................................................................................ 1

II.    Factual Background............................................................................................ 2

III.    Argument........................................................................................................ 6

   A.    Plaintiffs Have Adequately Alleged Aiding and Abetting Claims. ................. 6

     1.    Plaintiffs Adequately Plead That PayPal Acted With Actual Knowledge. ................. 6

     2.    Plaintiffs Adequately Alleged That PayPal Knowingly Provided Substantial Assistance. ............................................................................................... 8

     3.    Defendants' Cases Do Not Support Granting the Motion. ......................................... 10

   B.    Plaintiffs Have Sufficiently Alleged Fraud with Specificity. ......................... 12

   C.    Plaintiffs Sufficiently State A Claim For Aiding And Abetting Breach of Fiduciary Duty. 12

   D.    Plaintiffs' Aiding and Abetting Claims Are Plausible. .................................... 14

   E.    Plaintiffs Adequately Alleged a Jurisdictional Basis for Their California Blue Sky Claims. ............................................................................................................ 15

     1.    Plaintiffs Adequately Alleged That Defendant "Materially Assisted" Traffic Monsoon's Violation of California Blue Sky Law Section 25401. ...................................... 16

     2.    Plaintiffs Adequately an "Intent to Deceive or Defraud" Under Section 25504.1..... 17

   F.  Plaintiffs Have Properly Pled A Claim for Negligence. .................................... 18

     1.    PayPal's User Agreement Does Not Bar Plaintiffs' Negligence Claims. ................. 18

     2.    PayPal Owed a Duty of Care to Plaintiffs. ................................................. 22

     3.    Plaintiffs' Negligence Claim is Not Barred by the Economic Loss Rule ................. 24

     4.    Plaintiffs Have Properly Pled a Claim for Gross Negligence .................................. 25

IV.    Conclusion........................................................................................................ 25

Opposition to Defendants' Motion to Dismiss
Case No. 5:17-cv-02558

**<u>Table of Authorities</u>**

**Cases**

*A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982) ................................. 21

*Al-Kidd v. Ashcroft*, 580 F.3d 949, 976 (9th Cir. 2009) ...................................... 14

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 257 (2007)... 17

*Architectural Res. Grp., Inc. v. HKS, Inc.*, 2013 WL 568921, at *5 (N.D. Cal. Feb. 13, 2013) .. 25

*AREI II Cases*, 216 Cal. App. 4th 1004, 1015 (2013) ...................................... 16

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000)...................... 21

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................. 14

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) .............................. 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) .................................... 14

*Benson v. JPMorgan Chase Bank,* 2010 U.S. Dist. LEXIS 37456, *12-13 (N.D. Cal. April 15, 2010) ........................................................................... 8, 11

*Berman v. Knife River Corp.*, 2012 U.S. Dist. LEXIS 25790, at *19, *32 (N.D. Cal. Feb. 28, 2012) ............................................................................. 25

*Casey v. United States Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138 (2005) .......................... 6, 8, 10

*Chance World Trading E.C. v. Heritage Bank of Commerce*, 438 F.Supp.2d 1085 (N.D. Cal. 2005) ............................................................................. 11

*City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 754 (2007).......................... 21

*Cruz v. United States*, 219 F. Supp. 2d 1027, 1039 (N.D. Cal. 2002) .......................... 13

*Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, at *5 (N.D. Cal. Dec. 2, 2015)...................... 19

*Delgado* v. *Trax Bar & Grill*, 36 Cal. 4th 224, 234-235 (2005)........................... 22

*Ferrell v. S. Nev. Off-Road Enthusiasts*, 147 Cal. App. 3d 309, 315 (1983)................................ 18

*Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001) .............................. 20

*Giles v. GMAC*, 494 F.3d 865, 878-79 (9th Cir. 2007)........................................ 24

*Gross v. Sweet*, 49 N.Y.2d 102, 106 (1979) ................................................. 19, 21, 25

iv

*Henry v. Lehman Commer. Paper, Inc. (In re First All. Mortg. Co.)*, 471 F.3d 977, 993 (9th Cir. 2006) ................................................................................................................................................ 6

*In re Sharp Int'l Corp.*, 281 B.R. 506 (Bankr. E.D.N.Y. 2002) .................................................. 11

*In re ZZZZ Best Sec. Litig.*, 1990 U.S. Dist. LEXIS 11867, at *52 (C.D. Cal. July 23, 1990)..... 17

*Jabbari v. Wells Fargo & Co.*, 2017 U.S. Dist. LEXIS 106294 (N.D. Cal. July 8, 2017) ........... 15

*Jimenez v. 24 Hour Fitness USA, Inc.*, 237 Cal. App. 546, 552 n.3, 562 (2015) ........................ 25

*Litson-Gruenber v. JP Morgan Chase & Co.*, 2009 U.S. Dist. LEXIS 117749 (N.D. Tex. Dec. 16, 2009) ..................................................................................................................................... 11

*Lorenz v. East West Bancorp, Inc.*, 2016 U.S. Dist. LEXIS 5492, *21 (C.D. Cal. January 14, 2016) ............................................................................................................................... 6, 9, 12

*McFall v. Stacy & Witbeck, Inc.*, U.S. Dist. LEXIS 148399, at *18-23 (N.D. Cal. Oct. 26, 2016) ...................................................................................................................................................... 10

*Mendelsohn v. Capital Underwriters, Inc.* 490 F.Supp.1069, 1082-1087 (N.D. Cal. 1979)........ 10

*Morris v. Redwood Empire Bancorp.*, 128 Cal. App. 4th 1305, 1317 (2005) ........................ 20, 21

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 45 (2009) ........................................................................................................ 22, 23

*Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1120 (C.D. Cal. 2003) ............. 6, 7, 13

*Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 251 (2015) ................................ 21

*R. H. v. Los Gatos Union Sch. Dist.*, 33 F. Supp. 3d 1138, 1168 (N.D. Cal. 2014) .................... 21

*Rosner v. Bank China*, 528 F.Supp.2d 419, 426 (S.D.N.Y. 2007) ............................................. 11

*Schreiber Distrib. Co.* v. *Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).......... 12

*Solis v. Kirkwood Resort Co.*, 94 Cal. App. 4th 354, 360 (2001)................................................. 19

*Spencer v. DHI Mortg. Co.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ............................... 24

St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.), 536 F.3d 1049, 1057 (9th Cir. 2008) ...................................................................................................................................................... 14

*Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011) ......................................................... 23

v

*Tevis v. Blanchard*, 122 Cal. App. 2d 731, 737 (1954) ............................................... 16

*SEC v. Traffic Monsoon, LLC*, 245 F. Supp. 3d 1275 (D. Utah 2017). ........................................... 8

*Vilner v. Crocker Nat'l Bank*, 89 Cal. App. 3d 732, 736 (Cal. Ct. App. 1979).......................... 22

*Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973) ........................................... 12

**Statutes**

Cal. Civil Code § 2332................................................................................... 10

Cal. Corp. Code § 25017................................................................................... 16

Cal. Corp. Code § 25504.1.................................................................... 15, 16, 17, 18

Opposition to Defendants' Motion to Dismiss
Case No. 5:17-cv-02558

# I.  Introduction

Defendants (referred to herein as "Defendants" or "PayPal") have moved to dismiss this proceeding brought by victims of Traffic Monsoon, a Ponzi/pyramid scheme operated by Charles Scoville with the full knowledge and participation of PayPal. Defendants argue that at most, the allegations show reason to suspect Traffic Monsoon was a fraud. The well pled facts of the Complaint bely that argument.

The Traffic Monsoon Ponzi/pyramid scheme lasted over two years and involved the sale of $207 million in unregistered securities to over 162,000 victims.  From September 2014 through February 2016, PayPal knowingly provided substantial assistance to the Traffic Monsoon Ponzi/pyramid scheme. PayPal transferred approximately $134 million into the Traffic Monsoon scheme and transferred $61 million in Ponzi/pyramid scheme to older investors in the scheme. It also cloaked the Traffic Monsoon with a false air of legitimacy that caused investors to believe that their transactions were legitimate and protected from fraud.

PayPal knew that Traffic Monsoon was a fraudulent scheme:  PayPal admitted as much when it told some (but not all investors) that Traffic Monsoon was a scam in January 2016. Yet PayPal's knowledge of the fraudulent scheme began years earlier in September 2014 when Scoville applied for an account and told PayPal that Traffic Monsoon was an investment company. When PayPal verified the account information and reviewed Traffic Monsoon's website, PayPal learned that Traffic Monsoon was misrepresenting the nature of its services to investors. It saw that Traffic Monsoon falsely told investors that it was an advertising company and not offering investments. PayPal also learned from that Traffic Monsoon would hold investors' money in its PayPal Account, that Traffic Monsoon was operating a pay-to-click scheme and that Traffic Monsoon promised to make payments to investors in pyramid scheme fashion.

PayPal also knew that Traffic Monsoon was a fraudulent Ponzi/pyramid scheme based on its past business relationship with Scoville. PayPal previously banned Scoville from using its services following its investigation of allegations that prior pay-to-click businesses operated by

Opposition to Defendants' Motion to Dismiss
Case No. 5:17-cv-02558

Scoville were Ponzi/pyramid schemes. PayPal knew that Traffic Monsoon fit this same mold: Traffic Monsoon was also a pay-to-click scheme operated by Scoville that promised to make payments to investors in pyramid scheme fashion with false representations on its website.

For over two years, PayPal closely monitored Traffic Monsoon's Account. It saw the scheme grow exponentially (as is characteristic of a pyramid scheme) with revenue doubling approximately each month. It saw Traffic Monsoon commingle investor money and pay existing investors with new investors' money. Yet it did not enforce its previous ban on Scoville's use of its services or its own policy that prohibits the use of its services for "transactions that . . . support pyramid or [P]onzi schemes." Instead, PayPal substantially assisted the scheme and in return earned fees on thousands of transactions and interest on the millions of dollars in the account.

In the Complaint, Plaintiffs seek to hold Defendants liable for PayPal's knowing and substantial assistance of the Traffic Monsoon scheme as well as its negligence towards Plaintiffs and other victims who trusted PayPal. Defendants seek to avoid this liability by asking the Court to decide prematurely the merits of the case and make factual inference in their favor. The law, however, does not allow Defendants to escape in this manner. A motion to dismiss merely tests the sufficiency of the complaint. Here, those allegations are more than sufficient to state claims for relief that are plausible on their face. This Court should deny Defendants' motion to dismiss.

## II.     Factual Background

This case arises out of the Traffic Monsoon Ponzi/pyramid scheme operated by Traffic Monsoon and Charles Scoville that lasted over two years and involved the sale of $207 million worth of unregistered securities. Compl. at 1-4. Plaintiffs and the proposed Class (collectively, "Plaintiffs") invested millions of dollars to buy "AdPacks" in the Traffic Monsoon Ponzi/pyramid scheme. They allege that Defendant PayPal, Inc. ("PayPal") knowingly provided substantial assistance to the Traffic Monsoon scheme by transferring $134 million of investments to Traffic Monsoon and transferring $61 million of new investor money to earlier investors in Ponzi scheme fashion. *Id*. at 10. PayPal also knowingly cloaked the scheme with a false sense of legitimacy,

including knowingly allowing Traffic Monsoon to display its name on the website and use the email address paypal@trafficmonsoon.com. *Id.* at 18, 180. It also assisted Traffic Monsoon's continued retention of investors' money and thus continuation of the scheme. *Id.* at 10, 18, 20-22, 142, 143, 149, 180. Plaintiffs allege that PayPal Holdings, Inc. is also liable because it holds the assets and liabilities of PayPal. *Id.* at 29.

Traffic Monsoon's fraud began with its lies to investors (referred to as "members") set forth on its website that Traffic Monsoon was "a specialized advertising and revenue sharing company" that operated a pay-to-click and Internet traffic exchange program. *Id.* at 4, 64, 148-149, 72-77, 179. Traffic Monsoon claimed that each AdPack provided the investor with 1000 visits to the investor's website, 20 clicks on the investor's banner advertisement that would be listed on the Traffic Monsoon website, and – crucially – a cash component in the form of sharing in Traffic Monsoon's daily revenue from its advertising business. *Id.* at 6, 46, 48, 55, 56. Traffic Monsoon also told investors that it was not selling investments or operating a Ponzi/pyramid scheme that would pay returns to existing investors with money from new investors. *Id.* at 4, 48. And it required investors to agree that they were not purchasing investments. *Id.* at 49, 132.

Traffic Monsoon's representations were false. Traffic Monsoon was offering investments in a Ponzi/pyramid scheme. *Id.* at 9, 64, 173. The "revenue" that it supposedly shared from Traffic Monsoon was not revenue or profits from Traffic Monsoon's advertising business, but money from newer investors' purchases of AdPacks. *Id.* at 9, 53, 57-62.

PayPal knew that Traffic Monsoon lied to investors about the nature of its services and that Traffic Monsoon was in fact a Ponzi/pyramid scheme. *Id.* at 14. PayPal admitted that Traffic Monsoon was a fraudulent scheme in January 2016 when it told some investors that Traffic Monsoon was a scam. *Id.* at 148. Plaintiffs allege that PayPal learned of this fraud, however, years earlier when Traffic Monsoon opened its PayPal account. In September 2014, Scoville, told PayPal (but not investors) that Traffic Monsoon offered investments. *Id.* at 14. PayPal discovered that Traffic Monsoon was lying to investors when it reviewed Traffic Monsoon's website to verify

the information provided by Scoville. *Id*. at 14, 132. As such, PayPal learned that Traffic Monsoon was a pay-to-click scheme, Traffic Monsoon had misrepresented to investors that Traffic Monsoon sold advertising services, not investments, and that Traffic Monsoon would make payments to investors in pyramid scheme fashion. *Id*. at 14, 132-133.

PayPal also knew that Traffic Monsoon was a Ponzi scheme based on its prior business relationship with Scoville. PayPal had previously banned Scoville from using PayPal's services following allegations that his prior pay-to-click businesses, which also purportedly sold advertising businesses with revenue sharing, were Ponzi/pyramid schemes. *Id*. at 5, 122-128, 134. PayPal is well-aware that pay-to-click businesses have Ponzi/pyramid scheme features and has banned other pay-to-click businesses from using its website. *Id*. at 128. Despite this knowledge, PayPal did not enforce its prior ban on Scoville's use of its services. *Id*. at 5, 13.

PayPal also knew that Traffic Monsoon was operating as a Ponzi/pyramid scheme because it closely monitored Traffic Monsoon's account. *Id*. at 15-19, 120, 138. PayPal reviewed monthly account rollups that demonstrated that Traffic Monsoon was experiencing exponential growth with revenues doubling almost every other month. *Id*. at 138-141. It saw that Traffic Monsoon was commingling investor money and paying existing investors with new investors' money, in obvious Ponzi/pyramid scheme fashion. *Id*. at 114, 138. Indeed, the high volume of transactions and low charge backs on Traffic Monsoon's account earned praise from PayPal's Merchant Services group. *Id*. at 119, 138, 140. PayPal also actively monitored Traffic Monsoon's account through its "fraud" monitoring systems, anti-money laundering ("AML") and know your customer ("KYC") procedures. *Id*.

With the knowledge that Traffic Monsoon was a Ponzi/pyramid scheme, PayPal departed from its own policy that prohibits the use of its services for "transactions that . . . support pyramid or [P]onzi schemes." (PayPal Acceptable Use Policy.) *Id*. at 13. It also allowed Traffic Monsoon to hold millions of dollars of investors' funds in its PayPal account. *Id*. at 16. This activity is unusual, because PayPal accounts are not FDIC insured and do not bear interest. *Id*. at 16.

Because of the millions of dollars held in the account, PayPal earned interest on this money – a highly atypical source of income for PayPal. *Id*. at 16, 84.

In January 2016, PayPal's Merchant Risk Department decided to prevent withdrawals from Traffic Monsoon's account. *Id*. at 21. This was a different department from PayPal's Merchant Services Department that had been aware of the fraud, promoted the account, knowingly assisted the Traffic Monsoon scheme and knowingly allowed PayPal to profit from the unfortunate success of the scheme through fees on thousands of transactions and interest on the millions of dollars in the account. *Id*. at 17, 145, 161. PayPal's Merchant Risk Department told Scoville that the exponential growth in a short time frame and very low chargebacks associated with the account marked it as a Ponzi scheme. *Id*. at 21. Yet even then, PayPal continued to allow the Traffic Monsoon to accept deposits from new investors for another 30 days until February 2016. *Id*. at 22.

From September 2014 until February 2016, PayPal served almost exclusively as the payment processor for investors' payments to Traffic Monsoon. *Id*. at 115. This assistance was crucial, if not indispensable, for the ability of Traffic Monsoon to perpetuate the scheme. *Id*. at 10. Indeed, Scoville's other pay-to-click schemes failed after PayPal stopped providing its assistance. *Id*. at 127. Similarly, Traffic Monsoon's operation was hindered after PayPal stopped providing assistance in February 2016.

On July 26, 2016, in response to a complaint filed by the SEC against Traffic Monsoon and Scoville alleging securities fraud, the United States District Court for the District of Utah appointed a receiver and issued a temporary restraining order against Traffic Monsoon and Scoville that essentially shut down the Traffic Monsoon Scheme. On March 28, 2017, the court granted a preliminary injunction against Traffic Monsoon finding that Traffic Monsoon's sale of AdPacks was a Ponzi scheme and explaining that "[a]lthough there are minor variations, these definitions all agree that the central characteristic of a Ponzi scheme is that returns are not based

upon any underlying business activity. Instead, money from new investors is used to pay earlier investors." The Utah case remains pending.[1]

## III.    Argument

### A.  Plaintiffs Have Adequately Alleged Aiding and Abetting Claims.

A claim for aiding and abetting requires proof of two elements: (1) that the defendant had actual knowledge of the specific primary wrong and that (2) the defendant substantially assisted it. *See Casey v. United States Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138 (2005).  Under California law, aiding and abetting requires only actual knowledge, not specific intent.  *Henry v. Lehman Commer. Paper, Inc. (In re First All. Mortg. Co.)*, 471 F.3d 977, 993 (9th Cir. 2006).

#### 1.  Plaintiffs Adequately Plead That PayPal Acted With Actual Knowledge.

A plaintiff can sufficiently plead that had a defendant had actual knowledge by making general allegations. Fed R. Civ. Proc. 9(b); *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1120 (C.D. Cal. 2003). "Although, 'this obviates the necessity of pleading detailed facts supporting allegations of knowledge, it does not relieve a pleader of the burden of alleging the nature of the knowledge a defendant purportedly possessed." *Lorenz v. East West Bancorp, Inc.*, 2016 U.S. Dist. LEXIS 5492, *21 (C.D. Cal. January 14, 2016).

Plaintiffs' factual allegations are more than sufficient to show PayPal had actual knowledge Traffic Monsoon was misrepresenting to investors the nature of its business and that it was a Ponzi/pyramid scheme.  Plaintiffs alleged PayPal knew Traffic Monsoon falsely told investors that it was neither an investment nor a Ponzi/pyramid scheme.  *See e.g.,* Compl. at 1, 11, 15, 22, 129-141, 179.  They sufficiently support these allegations with facts that show knowledge:  Plaintiffs allege that PayPal knew that Traffic Monsoon was a Ponzi/pyramid scheme, because in January 2016, before PayPal stopped transferring investors' money to Traffic Monsoon, PayPal told some investors that Traffic Monsoon was scam. *Id.* at 22, 148-149, 179.

---

[1] Despite Defendants' arguments, the court did not issue an order that stays discovery in this case. (*See* Ex. 8 to Motion; Plaintiffs' Opposition to Motion to Stay, ECF Doc. 48.) Although the SEC case remains pending, this case should proceed in parallel. *Id.*

Opposition to Defendants' Motion to Dismiss
Case No. 5:17-cv-02558

Plaintiffs also alleged facts regarding the nature and source of PayPal's knowledge. They explain how PayPal learned that Traffic Monsoon was a scam years before it admitted as much to investors. In September 2014, Scoville told PayPal (but not investors) that Traffic Monsoon offered investments. *Id*. at 14, 132. PayPal then compared the information Scoville provided to PayPal with the information PayPal learned from reviewing Traffic Monsoon's website. *Id*. at 14, 132, 179. From its review of Traffic Monsoon's website, PayPal learned Traffic Monsoon was falsely telling investors that it offered advertising services that were not investments. *Id*. at 14, 132-133. It also learned Traffic Monsoon was a pay-to-click scheme that would make payments to investors in pyramid scheme fashion. *Id*.

At the same time, PayPal also knew that Scoville, the founder and operator of Traffic Monsoon, had previously operated pay-to-click schemes that were alleged to be Ponzi/pyramid schemes. *Id*. at 5, 122-128, 134. PayPal previously banned Scoville from using its services following its investigation into these allegations. *Id*. PayPal was also generally aware that pay-to-click schemes, like Traffic Monsoon, have Ponzi/pyramid scheme features. *Id*. at 128. Given this knowledge, it's a reasonable inference that PayPal also knew that Traffic Monsoon was also a Ponzi/pyramid scheme.

PayPal, however, failed to enforce its previous ban on Scoville's use of its services as well as its own policies prohibiting "transactions that . . . support pyramid or [P]onzi schemes" were departures from PayPal's typical operating procedures. These departures raise an inference that PayPal knew of the Ponzi/pyramid scheme and sought to accommodate it by altering its normal course of business. *See Neilson*, 290 F.Supp.2d at 1109 (finding the banks' use of atypical banking procedures to service the scheme's accounts raised an inference that the banks knew of the Ponzi scheme and accommodated it by altering their normal course of business).

PayPal also saw that Traffic Monsoon was operating as a Ponzi/pyramid scheme through its continuous monitoring of Traffic Monsoon's account. *Id*. at 129-141. It saw that that Traffic Monsoon was comingling investors' money in its account and that it paid older investors with

Opposition to Defendants' Motion to Dismiss
Case No. 5:17-cv-02558

money from newer investors. *Id*. at 14, 138, 179. It reviewed monthly account rollups that showed Traffic Monsoon's experienced exponential growth (as is characteristic with a Ponzi/pyramid scheme) with revenues doubling approximately every other month. *Id*. at 138-141. Indeed, in December 2015 (one month before it told some investors that Traffic Monsoon was a scam), PayPal's Merchant Services Department praised Traffic Monsoon's account performance for its high growth and small number of chargebacks. *Id*. at 119, 138, 140.

Defendants turn the pleading standard on its head by asserting that actual knowledge cannot be properly alleged without a legal determination that Traffic Monsoon was a Ponzi scheme. But this argument ignores the standard for a motion to dismiss in which the Court accepts the allegations as true and construes them in the light most favorable to the plaintiff. *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008). It also ignores that Plaintiffs alleged that Traffic Monsoon paid existing investors with money raised from the sale of new AdPacks. *Id*. at 14, 138, 179. A fact that the District of Utah found meets the controlling definition in the Tenth Circuit for a Ponzi scheme. *SEC v. Traffic Monsoon, LLC*, 245 F. Supp. 3d 1275 (D. Utah 2017).

### 2. Plaintiffs Adequately Alleged That PayPal Knowingly Provided Substantial Assistance.

Ordinary business transactions can constitute substantial assistance if the actor knew those transactions were assisting a customer in committing a specific tort. *Benson v. JPMorgan Chase Bank,* 2010 U.S. Dist. LEXIS 37456, \*12-13 (N.D. Cal. April 15, 2010). "Knowledge is the crucial element." *Casey*, 127 Cal. App. 4th at 1145.

Plaintiffs sufficiently alleged that PayPal knowingly provided substantial assistance to the Traffic Monsoon Ponzi/pyramid scheme. They allege PayPal knowingly aided and abetted the Ponzi/pyramid scheme by allowing Traffic Monsoon to have an account with PayPal, transferring money to and from the Ponzi/pyramid scheme, and holding millions of dollars of investors' funds in Traffic Monsoon's account all in violation of its own policy that prohibits the use of its services to support a Ponzi or pyramid scheme and without regard to its prior ban on Traffic Monsoon's operator's use of its services. Compl. at 16; 142, 180. PayPal also knowingly cloaked the Traffic

Monsoon's Ponzi/pyramid scheme with a false air of legitimacy that substantially assisted Traffic

Monsoon's ability to deceive investors, including Plaintiffs, into purchasing AdPacks. *Id*. at 143,

180. PayPal created this false sense of security by representing that PayPal monitors users'

accounts for fraud and prohibits "transactions that support . . . Ponzi schemes," allowing Traffic

Monsoon to display its name on the website and use an email address with PayPal's name while

at the same time knowingly allowing Traffic Monsoon to operate a Ponzi/pyramid scheme using

its services. *Id*. at 18, 143, 180. In January 2016, PayPal substantially assisted the continuation

of the scheme when despite having told some investors that Traffic Monsoon was a scam, it did

not prevent investors from transferring money into Traffic Monsoon's account or inform Plaintiffs

that Traffic Monsoon was a Ponzi/pyramid scheme. *Id*. at 148-149, 180. Indeed, this District has

found that knowingly assisting wire transfers of investments into a bank account sufficiently

alleges substantial assistance for an aiding and abetting scheme. *Lorenz*, 2016 U.S. Dist. LEXIS

5492 at *27-28 (denying a motion to dismiss an aiding and abetting claim).

       Defendants misconstrue Plaintiffs' allegations to suggest that Plaintiffs pled merely that a

breakdown of internal controls caused its assistance of the scheme. (Motion at 15.) Not so.

Plaintiffs allege that one of PayPal's departments, the Merchant Services Department, was aware

of the Traffic Monsoon Ponzi/pyramid scheme and knowingly provided substantial assistance to

the scheme, including even promoting the performance of the account, while another department,

the Merchant Risk Department decided to prevent withdrawals from the account in early 2016. *Id*.

at 21., 158-161. Plaintiffs allege that the communication between these two departments either

broke down, or was wholly disregarded allowing one of the Departments to knowingly assist the

fraud. *Id*. The knowledge of one department, however, is enough to impute knowledge to PayPal.

The knowledge of PayPal's employees can be imputed to PayPal since these employees are agents

of PayPal. *See* Cal. Civil Code § 2332. Further, the fact that one department at PayPal took some

action to freeze Traffic Monsoon's PayPal account after another department knowingly aided and

Opposition to Defendants' Motion to Dismiss
Case No. 5:17-cv-02558

abetted the scheme for over two years does not erase or change the allegations that PayPal knowingly provided substantial assistance to the Traffic Monsoon Ponzi/pyramid scheme.

Defendants' suggestion that this Court should somehow discount PayPal's assistance as immaterial also fails. Defendants are improperly asking this Court to make a factual determination that's inappropriate for a motion to dismiss.[2] In any event, Plaintiffs have sufficiently alleged that PayPal's assistance was crucial to the scheme. Compl. at 9, 10, 11, 103, 228. For example, Plaintiffs allege that Scoville's other schemes, like Traffic Monsoon, faltered once PayPal ceased transferring money. *Id.* at 127. They explain that PayPal's assistance was crucial because it facilitated Plaintiffs and thousands of investors ability to transfer $134 million worth of investments into Traffic Monsoon (approximately 65% of the total amount invested) over a two-year period. *Id.* PayPal's assistance also allowed the Ponzi/pyramid scheme to continue for years without hinderance. *Id.* Indeed, Defendants admit that PayPal hindered the scheme when it finally prevented investors from making depositions into Traffic Monsoon's account. (Motion at 8.)

### 3. Defendants' Cases Do Not Support Granting the Motion.

Defendants rely on case law in which courts found the plaintiffs alleged only that the defendants should have suspected something was "fishy." *Casey*, 127 Cal. App.4th at 1144, 1149 (finding that that the plaintiff failed to allege that the defendants had knowledge of the alleged misappropriation and explaining that plaintiff had only alleged that the defendants was aware of suspicious activity); *McFall v. Stacy & Witbeck, Inc.*, U.S. Dist. LEXIS 148399, at *18-23 (N.D. Cal. Oct. 26, 2016) (finding that the plaintiff pled that "something fishy" was going on instead of facts showing the alleged secondarily liable party had knowledge of the specific primary wrongdoing). These cases, however, are distinguishable because Plaintiffs alleged that PayPal had actual knowledge Traffic Monsoon was a fraud, not just suspicion.

---

[2] Defendants' reliance on *Mendelsohn v. Capital Underwriters, Inc.* as support that the Court should find that PayPal's assistance was somehow insubstantial is misplaced. *Mendelsohn* addressed a motion for summary judgment. 490 F.Supp.1069, 1082-1087 (N.D. Cal. 1979).

Other cases relied on by Defendants are inapposite because the findings and holdings in these cases are unique to the allegations pled in those complaints. In *Chance World Trading E.C. v. Heritage Bank of Commerce*, 438 F.Supp.2d. 1085 (N.D. Cal. 2005);[3] *Rosner v. Bank China*, 528 F.Supp.2d 419, 426 (S.D.N.Y. 2007), *In re Sharp Int'l Corp.*, 281 B.R. 506 (Bankr. E.D.N.Y. 2002), the courts found that the plaintiffs' allegations that the monitoring of suspicious activity did not show the knowledge of the alleged fraud. In contrast, Plaintiffs' allegations are not limited to PayPal's monitoring of the account. Plaintiffs allege that PayPal was aware that Traffic Monsoon was a Ponzi/pyramid scheme, because, among other factual allegations, PayPal told some investors that Traffic Monsoon was a scam. Compl. at 148.

Defendants' reliance on *Litson-Gruenber v. JP Morgan Chase & Co.* to suggest that knowledge of a third-party's previous wrongdoing is insufficient to support an aiding and abetting claim is similarly unpersuasive. (Motion 10 (citing 2009 U.S. Dist. LEXIS 117749 (N.D. Tex. Dec. 16, 2009)).) The allegation referenced by Defendants in *Litson-Gruenber*, however, is easily distinguishable from Plaintiffs' allegation that PayPal had a prior business relationship with Scoville that ended in PayPal banning his use of its services. Defendants also overlook that despite the outcome in *Litson-Gruenber*, this District later denied a motion to dismiss a claim against the same defendant for aiding and abetting the same fraudulent scheme. *Benson v. JPMorgan Chase Bank*. 2010 U.S. Dist. LEXIS 37465, *16-18 (N.D. Cal. April 15, 2010). This District explained that unlike *Litson-Gruenber*, the plaintiffs had also alleged that defendant had a "close business relationship" as well as had conducted two separate audits of the defendant's business. *Id*. It found that "the sum of the allegations, together with reasonable inferences therefrom, establish a sufficiently plausible claim of aiding and abetting for pleading purposes." *Id*. Here, unlike *Liston-Gruenber*, the sum of Plaintiffs' allegations, including PayPal's prior business relationship with Scoville, also sufficiently support Plaintiffs' aiding and abetting claims.

---

[3] In *Chance World Trading*, the court addressed a motion for summary judgment. Plaintiff's claim for aiding and abetting fraud survived defendant's motion to dismiss. *Id*. at 1083.

**B. Plaintiffs Have Sufficiently Alleged Fraud with Specificity.**

Plaintiffs have sufficiently alleged Traffic Monsoon's and Scoville's underlying fraud with particularity. Defendants' argument to the contrary ignores the allegations of the complaint.

Rule 9(b) requires a plaintiff to put the defendant on notice by "identifying the circumstances constituting fraud" sufficiently "so that the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973). To meet this standard, "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Schreiber Distrib. Co.* v. *Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Essentially, plaintiffs must allege the who, what, where, and when of the alleged fraud. *See id.* Rule 9(b) is satisfied where a plaintiff puts forth allegations detailing alleged misrepresentations on a website, explains why those representations were false, and states when the plaintiff accessed that website. *See, e.g.*, *Lorenz*, 2016 U.S. Dist. LEXIS 5492, at *17-18 (holding plaintiffs adequately alleged fraud where the complaint detailed misrepresentations made on a website, why they were false, and when the plaintiffs made investments in reliance on them).

Here, Plaintiffs' allegations satisfy Rule 9(b) and provide more than sufficient information for Defendants to prepare an answer. Plaintiffs alleged:

- *who* made the misrepresentations and omissions (i.e., Traffic Monsoon and Scoville), Compl. at 173;
- *what* were the specific misrepresentations and omissions at issue, *id.* at 48-49, 55, 76-77 173, and *why* they were false, *id.* at 53, 57-64;
- *where* the misrepresentations were made (i.e., on Traffic Monsoon's website)*, id.* at 48-49; and finally
- *when* Plaintiffs accessed the website, *id.* at 25-26.

Plaintiffs also alleged that the misrepresentations and omissions were material to Plaintiffs' decision to purchase AdPacks from Traffic Monsoon, that Plaintiffs were unaware of their falsity, and that they relied on them to their detriment when purchasing the AdPacks. *Id.* at 174-177. The Complaint details how Traffic Monsoon operated its Ponzi/pyramid scheme. *Id.* at 36-64.

**C. Plaintiffs Sufficiently State A Claim For Aiding And Abetting Breach of Fiduciary Duty.**

Plaintiffs have also sufficiently stated a claim that Defendants aided and abetted Traffic Monsoon's and Scoville's breach of fiduciary duty owed to investors. To state a claim for aiding and abetting the breach of a fiduciary duty, a plaintiff must plead that the aider and abettor had knowledge that the primary wrongdoer's conduct constituted a breach of duty, and substantially assisted that breach of duty. *See Neilson*, 290 F. Supp. 2d at 1127. Plaintiffs are not required to prove the existence of the underlying fiduciary duty to survive a motion to dismiss. *See Cruz v. United States*, 219 F. Supp. 2d 1027, 1039 (N.D. Cal. 2002) ("[t]he existence of a fiduciary duty is generally a question of fact which cannot be resolved at the motion to dismiss stage").

Here, Plaintiffs sufficiently alleged a claim for breach of fiduciary duty. They alleged that they placed their trust and confidence in Traffic Monsoon and Scoville to oversee their investments and distribute their shares of revenue, to act as agent and trustee of their investments, and to hold and safeguard their funds until eligible for withdrawal. Compl. at 187-188. Plaintiffs alleged that Traffic Monsoon and Scoville owed them fiduciary duties, including using their investment money as promised and managing and allocating their revenue shares, the duty of loyalty, which included to avoid using investor money to perpetrate a Ponzi/pyramid scheme, and a duty to disclose material information regarding their investments. *Id*. at 189-190. Plaintiffs alleged that Traffic Monsoon and Scoville breached these duties by lying to investors regarding the nature of their services, including misrepresenting that Traffic Monsoon was not an investment and not a Ponzi/pyramid scheme, using investors' funds to operate a Ponzi/pyramid scheme, and failing to disclose to investors that Scoville had a prior history of defrauding investors. *Id*. at 191-194.

Plaintiffs further alleged that Defendants knew that Traffic Monsoon and Scoville owed investors fiduciary duties because, among other facts, Scoville told Defendants that Traffic Monsoon was offering investments and PayPal knew that Traffic Monsoon would hold investor money in its account as a result of its review of Traffic Monsoon's website during its account verification process. *Id*. at 14, 132, 195. Indeed, PayPal marked the account as "Investments – general." *Id*. at 132. Plaintiffs alleged that Defendants knew that Traffic Monsoon and Scoville

Opposition to Defendants' Motion to Dismiss
Case No. 5:17-cv-02558

were breaching fiduciary duties owed to investors by commingling investor funds, misleading investors, misusing investor funds to make Ponzi payments, and by misleading investors on how their funds would be used. *Id*. at 196. They alleged facts to support these allegations including that Defendants later told some investors it was a scam. *E.g. id*. at 5, 14, 122-128, 132-133,148. Lastly, Plaintiffs alleged facts that show Defendants knowingly provided substantial assistance to Scoville's and Traffic Monsoon's breach of its fiduciary duties by allowing them to use its services in furtherance of a Ponzi/pyramid scheme, cloaking the Traffic Monsoon scheme with a false air of legitimacy and assisting Traffic Monsoon's continued retention of funds. *Id*. at 196-197.

### D. Plaintiffs' Aiding and Abetting Claims Are Plausible.

Plaintiffs have alleged specific facts and details that satisfy the plausibility test of Twombly and Iqbal. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1057 (9th Cir. 2008). The Ninth Circuit has explained that "'[t]he plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Al-Kidd v. Ashcroft*, 580 F.3d 949, 976 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the pleading stage, "[a]sking for plausible grounds to infer the existence of a claim for relief . . . simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to prove that claim." Id. at 977 (quoting Twombly, 550 U.S. at 556) (internal quotation marks omitted). A court considers the sum of the allegations in the complaint when analyzing plausibility. See id. at 976.

As set forth above, the sum of the allegations, together with reasonable inferences therefrom, establish sufficiently plausible claims of aiding and abetting for pleading purposes. Defendants suggest that the Complaint is implausible because PayPal later terminated

its assistance with Traffic Monsoon.  But Plaintiffs are not required to allege that Defendants acted consistently.  By contrast, Plaintiffs have alleged that different departments of PayPal acted inconsistently.  It's enough that the Merchant Services Department and perhaps others were aware that Traffic Monsoon was a Ponzi/pyramid scheme and actively assisted that fraud.  There is nothing "irreconcilable" or anything that "defies logic" with Plaintiffs' allegation that a different department in PayPal caused it to change course (over two-years into the scheme, no less) when the scheme had grown too large. At this point, exposure was likely inevitable.

Further, liability for aiding and abetting does not require the substantial assistance provided by the defendant to be indefinite. If anything, PayPal's admission that Traffic Monsoon was a scam in January 2016 to some (but not all) investors makes its failure to tell all investors this information and stop transferring investors' money into Traffic Monsoon's account even more culpable.

Despite Defendants' attempt to portray with an aura of innocence, well-known companies have been known to participate in fraud.  *E.g.*, *Jabbari v. Wells Fargo & Co.,* 2017 U.S. Dist. LEXIS 106294 (N.D. Cal. July 8, 2017) (order granting motion for preliminary approval of settlement of case involving allegations that Wells Fargo opened numerous unauthorized accounts).   The issue here is the sufficiency of Plaintiffs' allegations to support a plausible claim for relief.  As set forth above, Plaintiffs' allegations are more than sufficient to state plausible claims for aiding and abetting against Defendants.  *Infra* Section III(A).

### E.  Plaintiffs Adequately Alleged a Jurisdictional Basis for Their California Blue Sky Claims.

Plaintiffs adequately pled a claim for violation of the California Blue Sky Law § 25504.1 because they alleged that Traffic Monsoon's offering of AdPack securities originated in California. *See* Compl. at 222. Defendants concede that § 25504.1 applies to violations related to securities offered in California, *see* Motion at 21, and that an offer or sale of a security is made in California if the "offer is made from California to a person outside the state," *see id.*, p.18. Here, Plaintiffs alleged that the "offers to buy the AdPacks were accepted by Traffic Monsoon in California," Compl. at 222, and that the "[o]ffers to sell the AdPacks also originated in California since the

Opposition to Defendants' Motion to Dismiss
Case No. 5:17-cv-02558

[Traffic Monsoon] servers were located in California." *Id.* Plaintiffs allegations are sufficient to satisfy the jurisdictional prerequisites of § 25504.1.

### 1. Plaintiffs Adequately Alleged That Defendant "Materially Assisted" Traffic Monsoon's Violation of California Blue Sky Law Section 25401.

Defendants misstate the law when they claim that a defendant cannot be liable under § 25504.1 unless the defendant makes or disseminates false and misleading statements to the investors. (Motion at 20.) Defendants' case states that it's the *primary* violator who must make false and misleading statements in furtherance of a sale; "materially aiding" liability under § 25504.1 is triggered when an aider-defendant plays a "material, facilitating role" in the primary violator's act of selling through misrepresentations and omissions. *See AREI II Cases*, 216 Cal. App. 4th 1004, 1015 (2013). Defendants' argument that Plaintiffs should have alleged that PayPal made or distributed false and misleading statements to Plaintiffs to plead § 25504.1 liability is based on a false premise. The *AREI II* court merely offered examples of potential conduct that constitutes assistance, and included the act of communicating false statements as *one* example.

In their Complaint, Plaintiffs included such allegations as required by *AREI II*, showing that PayPal played a "material, facilitating role" in Traffic Monsoon's act of selling the AdPack securities through false and misleading statements. First, Plaintiffs alleged facts that show PayPal played a "material, facilitating role in [Traffic Monsoon's] act of selling" AdPack securities through misrepresentations and omissions, *see AREI II, infra*, by facilitating the payment for those securities, an element of the "sale" of a security, *see Tevis v. Blanchard*, 122 Cal. App. 2d 731, 737 (1954) and Cal. Corp. Code § 25017. They alleged that PayPal facilitated the AdPack investments procured by Traffic Monsoon through false statements and omissions by serving as the payment processor for those investments, with knowledge of Scoville's prior, undisclosed and similar scams, and with knowledge that Traffic Monsoon was running a pyramid/Ponzi scheme, Compl. at 3, 5, 15, 120, 129-140, and that PayPal allowed Scoville to use PayPal's infrastructure to perpetrate his fraudulent sales of AdPack investments. *Id.*, 102, 129, 141-143. They alleged that PayPal played a "crucial" and "indispensable" role in Traffic Monsoon's securities violations by

16

transferring the payment for Scoville's sales of AdPack securities through false statements and omissions, from investors to Scoville, *id*. at 10, 103, 142-43, and did so with knowledge of Traffic Monsoon's fraud and misrepresentations to investors in its sales of AdPack securities, *id*. at 11, 120, 129-140. Indeed, accepting the proceeds of the sale – i.e., handling the payment – is a necessary element of a sale of securities under the California Blue Sky Law. *See, e.g.*, *Tevis*, 122 Cal. App. 2d at 737 (1954) ("A corporation actively participates in … a sale [of securities] when it accepts the proceeds or a portion of the proceeds of the sale."); *see also* Cal. Corp. Code § 25017.

Second, Plaintiffs alleged that PayPal provided substantial assistance to Traffic Monsoon's sales of securities through false statements and omissions by "cloaking Traffic Monsoon with a false air of legitimacy" that reasonably caused investors to believe that their purchase of AdPack securities from Traffic Monsoon were legitimate and protected from fraud, Compl. ¶ 18-19, 142-43, and further detailed how PayPal allowed Traffic Monsoon to display PayPal's name on its website, thus creating a sense of security for potential purchasers and assisting Traffic Monsoon's ability to deceive those investors into purchasing the AdPack securities through PayPal through false statements and omissions. *Id*. Thus, Plaintiffs' allegations sufficiently trigger liability under § 25504.1 by alleging that Defendants played a "material, facilitating" role in Traffic Monsoon's sales of securities through false representations and omissions.

### 2. Plaintiffs Adequately an "Intent to Deceive or Defraud" Under Section 25504.1.

To properly allege a claim under § 25504.1, a plaintiff must show that the defendant "intended to induce the investors to rely on representations known to be false or misleading." *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 257 (2007). Allegations that the defendant acted with the statutorily required intent to deceive or defraud, when read in conjunction with allegations of actual knowledge, properly state a claim under the statute. *See In re ZZZZ Best Sec. Litig.*, 1990 U.S. Dist. LEXIS 11867, at *52 (C.D. Cal. July 23, 1990).

Plaintiffs' complaint properly alleged secondary liability under § 25504.1. Plaintiffs alleged that Defendants materially aided, "with intent to deceive or defraud," in Traffic Monsoon's

securities violations, "for the reasons set forth in the preceding paragraphs." Compl. ¶ 227. In those preceding paragraphs, Plaintiffs alleged in extensive detail that Defendants had actual knowledge of Traffic Monsoon's false statements and omissions – and specifically that Traffic Monsoon was selling investments, not advertising products; Traffic Monsoon was operating a fraudulent Ponzi/pyramid scheme; and Scoville had a history of defrauding investors through similar investment programs. *See id*. at 226, 179, 129-41. When these allegations are read together, Plaintiffs sufficiently alleged that Defendants acted with intent required under § 25504.1.[4]

### F. Plaintiffs Have Properly Pled A Claim for Negligence.

#### 1. PayPal's User Agreement Does Not Bar Plaintiffs' Negligence Claims.

PayPal argues that, by accepting various provisions of PayPal's User Agreement ("Release"),[5] Plaintiffs released their negligence claims.[6] (*See* Motion at 21-22.) PayPal alleges the Release shields it from all potential negligence claims—no matter how arisen—and all claims related in any way, no matter how indirectly, to third-party conduct. *Id.* This is wrong. First, the Release does not clearly and explicitly encompass PayPal's own negligence. Second, such a broad construction is unreasonable, unconscionable, and would thus render the Release unenforceable. Third, exculpatory provisions do not release gross negligence.

##### a. The Release Does Not Clearly and Explicitly Absolve PayPal of Liability.

The law strongly disfavors attempts to avoid liability from one's own negligence and strictly construes such provisions against the drafter of the document. *Ferrell v. S. Nev. Off-Road Enthusiasts*, 147 Cal. App. 3d 309, 315 (1983). To insulate oneself from one's own future

---

[4] Defendants suggest that Plaintiffs' allegations that PayPal told some investors that Traffic Monsoon was a fraud and set up a telephone number for investors to call shows that Plaintiffs' allegations are implausible. As explained in Section III(D), there's nothing implausible that two-years into the scheme when exposure was likely inevitable that PayPal tried to change its course.
[5] Plaintiffs here refer specifically to the language of the Paypal User Agreement quoted at pages 21-22 of Defendant's Motion to Dismiss (the "Release").
[6] Plaintiffs do not concede that they accepted the Release and furthermore dispute whether PayPal has properly established that the Release was accepted by all PayPal users, including Plaintiffs and the putative class members.

Opposition to Defendants' Motion to Dismiss
Case No. 5:17-cv-02558

negligence, the party seeking to rely on an exculpatory provision must select words or terms that "clearly and explicitly" express this is the intent of the parties. *Id*. A general release cannot shield the drafter from liability where its own active negligence was a proximate cause of the injury and where the release does not explicitly release such active negligence. *E.g.,id*. at 317 (holding "in order to include acts amounting to active or affirmative negligence, the indemnity [or exculpatory] provision must be clear, positive and specific to that effect"); *see also Gross v. Sweet*, 49 N.Y.2d 102, 106 (1979) (holding "it must appear plainly and precisely that the 'limitation of liability extends to negligence or other fault of the party attempting to shed his ordinary responsibility'").

The Release does not clearly and explicitly release PayPal's own negligence, much less its own active negligence. (*See* Motion, Exh. 14.) While it is true the Release mentions the word "negligence," *see* Motion, Exh. 14, it is not clear and explicit that the negligence referenced includes PayPal's negligence. Rather, the provision could reasonably be read to apply to claims caused by third-party negligence, particularly since the mention of negligence claims occurs in a section discussing PayPal's liability for third-party conduct. *Id., see also Solis v. Kirkwood Resort Co.*, 94 Cal. App. 4th 354, 360 (2001) (holding a provision is not unambiguous "when a party can identify an alternative, semantically reasonable, candidate of meaning"). For the same reason, the portion of this section that purports to release liability for any damages or losses "resulting directly or indirectly from . . . the content, actions, or inactions of Third Parties," *see* Motion, Exh. 14, cannot be read to apply to PayPal's active negligence. Because PayPal drafted the Release, if it wanted to rely on the Release to absolve it from its own active negligence, it should have made this language explicit.

PayPal cites only a single, easily-distinguishable case, in support of its claim that the Release is "clear, unambiguous, and explicit, and routinely enforced to dismiss negligence claims." (*See* Motion at 22 (citing *Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, at *5 (N.D. Cal. Dec. 2, 2015)).) But *Darnaa* involved a substantively dissimilar contractual release that merely barred recovery for claims relating to two specific factual contexts. *See id.* at *5. It was not remotely as

Opposition to Defendants' Motion to Dismiss
Case No. 5:17-cv-02558

broad as the construction PayPal alleges should apply to the Release. (*See* Motion at 22 (alleging the Release bars all potential negligence claims and all claims in any way, no matter how remotely, related to the actions of third parties).) The *Darnaa* Court acknowledged the release in that case was appropriate because the defendants were engaged in providing a free service, and limitations on liability for unintentional wrongs are "'particularly important where the beneficiary of the clause is involved in a high-risk, low compensation service.'" *Id.* at *5. Such reasoning is inapplicable here, where PayPal's services were neither high-risk nor low-compensation, much less free. *See* Compl. at 107-109, 115-119 (detailing PayPal's substantial profits).

Given the general disfavor for releases of future liability for one's own active negligence, that the Release does not explicitly reference PayPal's own negligence, that the reference to negligence could reasonably be interpreted as a release for third party negligence, and that the Release must be strictly construed against the drafter, the Release should not be construed as releasing PayPal's liability for Plaintiffs' negligence claim.

### b. PayPal's Preferred Construction of the Release Would Render It Unenforceable.

If the Court accepts PayPal's broad construction of its own Release, it should nevertheless hold the Release does not bar Plaintiffs' negligence claims because the Release is unenforceable. "[C]ourts may refuse to enforce any contract found 'to have been unconscionable at the time it was made,' or may 'limit the application of any unconscionable clause.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (quoting Cal. Civ. Code Ann. § 1670.5(a) (West 1985)). A contract or provision thereof is unenforceable if it is both procedurally and substantively unconscionable. *Morris v. Redwood Empire Bancorp.*, 128 Cal. App. 4th 1305, 1317 (2005).

As to the procedural factor, an adhesion contract suffices for a finding of procedural unconscionability." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001). The Release constitutes an adhesion contract because it is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz v. Found. Health Psychcare Servs.,*

*Inc.*, 24 Cal. 4th 83, 113 (2000). The Release meets this definition of adhesion and procedural unconscionability; it was part of a standardized contract, imposed and drafted by PayPal, and Plaintiffs had no opportunity to negotiate. As discussed *supra*, the Release's language is not clear and explicit. It is unreasonable to assume that Plaintiffs could have understood or foreseen that it would be interpreted in such a harsh manner.

As to the substantive factor, "[a] provision is substantively unconscionable if it 'involves contract terms that are so one-sided as to shock the conscience, or that impose harsh or oppressive terms.'" *Morris*, 128 Cal. App. 4th at 1322. Provisions that reallocate risk or limit the weaker party's available remedies are readily recognized as substantively unconscionable. *See, e.g., Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 251 (2015) (holding clause that limited available remedies was substantively unconscionable). This is particularly true where, as here, the party with superior bargaining strength attempts to shift the risk for its own negligence to the other party. *See A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982) ("If there is a type of risk allocation that should be subjected to special scrutiny, it is probably the shifting to one party of a risk that *only* the other party can avoid."). If the Court accepts PayPal's interpretation of the Release, then the provision shifts all the risk of PayPal's own negligence to Plaintiffs, with no compensation provided and even though PayPal is in the best—indeed the only—position to prevent such risk. There is no similar limitation of PayPal's remedies if Plaintiffs breach the agreement, demonstrating the Release is one-sided. Accordingly, the Release meets the UCC test for unconscionability and thus is unenforceable.

### c. PayPal's Release Cannot Shield Itself from Its Willful and Grossly Negligent Acts.

Gross negligence encompasses a "want of scant care" or "an extreme departure from the ordinary standard of conduct." *City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 754 (2007). Release agreements that purport to waive liability for intentional misconduct or future gross negligence are unenforceable as a matter of public policy. *See, e.g., id.* at 777; *R. H. v. Los Gatos Union Sch. Dist.*, 33 F. Supp. 3d 1138, 1168 (N.D. Cal. 2014). Plaintiffs have plausibly

alleged PayPal's conduct was willful and amounted to gross negligence because PayPal willfully and dramatically departed from its own policies and procedures to aid and abet Traffic Monsoon's and Scoville's fraud and breaches of duty. Accordingly, the Release should be held unenforceable to insulate PayPal from liability for gross negligence.

### 2. PayPal Owed a Duty of Care to Plaintiffs.

#### a. PayPal Owed a Duty of Care Not to Assist in Fraud Through Active Negligence.

When PayPal undertook to process investments for Plaintiffs, it took on a duty of care. *See, e.g.*, *Delgado* v. *Trax Bar & Grill*, 36 Cal. 4th 224, 234-235 (2005) ("[A]s a general principle, a 'defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.'"). In rejecting its obligations, PayPal argued it should be insulated from these duties on the erroneous analogy between its duties and the duties owed by a bank to a depositor.[7] (*See* Motion at 23.) PayPal cited no authority for its bare allegation that the duties owed by a bank - which operates in a highly regulated and specific industry - are analogous to the duties owed to its clients by a business that processes payments and facilitates monetary transfers through the Internet in exchange for a fee. Indeed, they are not. Even if PayPal is correct about that, it's axiomatic that once PayPal knew the fraud was being perpetrated - as Plaintiffs allege it did - it had a duty not to perpetuate the fraud against Plaintiffs by assisting in that scheme through its own active negligence.

#### b. PayPal Owed A Duty of Care under the Special Relationship Doctrine.

Plaintiffs also stated sufficient facts to plausibly allege PayPal owed a duty of care under the *Rowland* factors. See *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 45 (2009) (listing the factors). PayPal misrepresents the proper application of the *Rowland* factors to this case, purporting to change the burden of proof

---

[7] To the extent that PayPal's services *are* analogous to those provided by a bank, this merely provides yet another reason why PayPal's purported release is unenforceable. *See, e.g.*, *Vilner v. Crocker Nat'l Bank*, 89 Cal. App. 3d 732, 736 (Cal. Ct. App. 1979)

necessary at the pleading stage. At this stage, Plaintiffs need not *prove* PayPal owed a duty of care, but merely must allege facts sufficient to establish that PayPal plausibly did so. *See Id*. at 46 n.3 (2009) (holding, at the pleading stage, whether Plaintiffs alleged facts sufficient to establish a duty of care must be "made on the basis of the allegations in the complaint," even if the facts proven at trial may be different than those alleged). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011). As such, PayPal's Motion should be denied.

First, Plaintiffs have plausibly alleged that their danger was foreseeable. *See*, *e.g.,* Compl. at 5, 9-15, 22, 109, 114, 129-143, 148-153, 172-185, 204-217 (plausibly alleging that PayPal knew Traffic Monsoon and Scoville were perpetrating a fraudulent Ponzi scheme with PayPal's assistance, were making false representations to PayPal's clients, and were victimizing new investors to keep the scheme going). PayPal has failed to show that these allegations are implausible. Because Plaintiffs plausibly alleged facts suggesting the harm to them was foreseeable, this factor weighs in favor of finding PayPal owed a duty of care.

Second, the certainty that Plaintiffs suffered injury is easily ascertained. Plaintiffs have alleged they and the proposed Class have lost over $5 million investing in Traffic Monsoon. *See id*. at 157, 185. PayPal holds records documenting each investment and withdrawal, including the multiple withdrawals PayPal allowed Scoville to make from the account. *See id.* 102-115, 153. Thus, PayPal has the means to determine with certainty whether and to what extent Plaintiffs were injured. As such, this factor weighs in Plaintiffs' favor. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 171 Cal. App. 4th at 46 (holding this factor weighs in plaintiff's favor where the injury is economic and payment can be ascertained with certainty).

Third, there is a very close relationship between PayPal's conduct and the injury suffered. Plaintiffs plausibly alleged PayPal's assistance was crucial and indispensable to Traffic Monsoon's success. Compl. at 9-10, 103, 180, 212-217, 280 (alleging PayPal was negligent in knowingly

Opposition to Defendants' Motion to Dismiss
Case No. 5:17-cv-02558

assisting the fraud by allowing Traffic Monsoon and Scoville to use PayPal's services in an a-typical and extraordinary manner, and detailing the ways PayPal provided crucial assistance). In countering this conclusion, PayPal again inappropriately seeks to supplant the well-pled allegations of the Complaint with its own version of the facts. (*See* Motion at 24.) Because PayPal has failed to show Plaintiffs' version of the facts is *implausible*, this argument is inappropriate. Because Plaintiffs plausibly alleged PayPal's conduct was closely related to the harm suffered, this factor weighs in favor of finding Plaintiffs plausibly alleged PayPal owed a duty of care.

Fourth, there is an extremely high degree of moral blame attached to PayPal's alleged conduct. Plaintiffs plausibly alleged PayPal knew its own customers were being defrauded and not only allowed it to continue, but actively and negligently assisted for profit—even after admitting the existence of the scam. *See id.* 148-149, 197, 217.

Fifth, Plaintiffs plausibly alleged PayPal was actively negligent and indispensable to the success of the scheme. It thus makes no sense to claim—as PayPal does—that it is not a "responsible" party. It also serves the public policy goal of preventing future harm to find a duty here. Further, as PayPal has independent duties to report suspicious behavior in its accounts, imposing liability here does not substantially increase the burden on this party.

Thus, the *Rowland* factors support a finding that PayPal owed Plaintiffs a duty of care.

### 3. Plaintiffs' Negligence Claim is Not Barred by the Economic Loss Rule

The economic loss doctrine bars a plaintiff from recovering in tort for purely economic losses that may be recovered in a contract action. *Spencer v. DHI Mortg. Co.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009). The doctrine is inapplicable where, as here, a plaintiff alleges tort claims based on duties arising independently from a contract. *See, e.g., Giles v. GMAC*, 494 F.3d 865, 878-79 (9th Cir. 2007) (holding the doctrine "does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract" even where the harm caused was "purely monetary"). It is undisputed that Plaintiffs' negligence claims are based on duties owed by PayPal independent of a contract with Plaintiffs. If that were not the case, there would be no

need for the parties to dispute through this motion practice whether PayPal owed Plaintiffs a duty of care under the *Rowland* factors, as the duty would be imposed from the contract itself. As such, PayPal's economic loss doctrine argument is misplaced.

#### 4. Plaintiffs Have Properly Pled a Claim for Gross Negligence

This Court has held a plaintiff may plead an independent claim for gross negligence so long as the plaintiff alleges either a "want of even scant care" or "extreme departure from the ordinary standard of conduct" along with the traditional elements of negligence. *Berman v. Knife River Corp.*, 2012 U.S. Dist. LEXIS 25790, at *19, *32 (N.D. Cal. Feb. 28, 2012) (denying motion to dismiss cause of action for gross negligence). As Plaintiffs have plausibly plead such allegations here, *see* Compl. 204-211, their claim for gross negligence should survive PayPal's motion to dismiss.[8] The one case that Defendants cite supporting dismissal of a claim for gross negligence at the pleading stage is distinguishable, as that case held gross negligence was not distinct from *professional* negligence. *See Architectural Res. Grp., Inc. v. HKS, Inc.*, 2013 WL 568921, at *5 (N.D. Cal. Feb. 13, 2013). If, however, the Court feels it is appropriate to dismiss Plaintiffs' claim for gross negligence, Plaintiffs respectfully request leave to amend their negligence claim to add their allegations of gross negligence. *See id.* (granting plaintiff leave to amend professional negligence claim to include allegations of gross negligence).

### IV. Conclusion

For the reasons discussed above, PayPal's motion should be denied. In the alternative, Plaintiffs seek leave to amend their complaint.

Dated: November 8, 2017                    Respectfully Submitted,

                                          */s/ Alan L. Rosca*
                                          Alan L. Rosca (OBN 0084100)
                                          *Pro hac vice*

---

[8] A few courts have held there is no stand-alone cause of action for gross negligence under California law. But in practice, this generally means merely that plaintiffs *need not* plead a separate cause of action for gross negligence. *See, e.g., Jimenez v. 24 Hour Fitness USA, Inc.*, 237 Cal. App. 546, 552 n.3, 562 (2015).

Lydia M. Floyd (OBN 0088476)
*Pro hac vice*
Peiffer Rosca Wolf
Abdullah Carr & Kane,
A Professional Law Corporation
1422 Euclid Avenue
Suite 1610 Cleveland, Ohio 44115
Telephone: 216-589-9280
Fax: 888-411-0038
Email: arosca@prwlegal.com
Email: lfloyd@prwlegal.com


Adam Wolf (SBN 215914)
Peiffer Rosca Wolf
Abdullah Carr & Kane,
A Professional Law Corporation
4 Embarcadero Center
Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-3544
Fax: (415) 402-005
Email: awolf@prwlegal.com

*Counsel for Plaintiffs and the proposed Class*

## CERTIFICATE OF SERVICE

I declare that, on November 8, 2017, the foregoing document was served via the Court's ECF system upon:

James N. Kramer
Alexander K. Talarides
Suzette J. Pringle
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     (415) 773-5700
Email: jkramer@orrick.com
Email: atalarides@orrick.com
Email: springle@orrick.com

Attorneys for Defendants
PayPal Holdings, Inc. and PayPal, Inc

/s/ Alan L. Rosca
Alan L. Rosca