United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KINGSLEY EZEUDE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PAYPAL, INC., et al.,<br><br>Defendants. | Case No. 17-CV-02558-LHK<br><br>**ORDER STAYING CASE**<br><br>Re: Dkt. No. 31 |

Before the Court is Defendants PayPal, Inc. and PayPal Holdings, Inc.'s Motion for Stay of Proceedings. ECF No. 31 ("Mot."). Plaintiffs Kingsley Ezeude and Chukwuka Obi brought a class action against Defendants alleging that Defendants aided and abetted a Ponzi scheme operated by two non-parties, Traffic Monsoon, LLC ("Traffic Monsoon") and Charles David Scoville ("Scoville"), and that Defendants were otherwise negligent. Defendants seek to stay the proceedings in this case until the United States District Court for the District of Utah lifts a stay order in another case brought by the Securities and Exchange Commission ("SEC") against Scoville and Traffic Monsoon. *See SEC v. Traffic Monsoon, LLC*, No. 16-cv-00832-JNP (D. Utah). Plaintiffs oppose Defendants' motion. ECF No. 48. Defendants filed a reply. ECF No. 54. Having considered the submissions of the parties, the record in this case, and the relevant law,

1

Case No. 17-CV-02558-LHK
ORDER STAYING CASE

the Court hereby STAYS this proceeding until the stay order in *Traffic Monsoon* is lifted and the Tenth Circuit resolves the interlocutory appeal in *Traffic Monsoon*.

## I. BACKGROUND

### A. The *Traffic Monsoon* Case

On July 26, 2016, the SEC brought suit against Traffic Monsoon and Scoville in the United States District Court for the District of Utah (the "Utah Court"). *See* ECF No. 32 ("RJN")[1] Exh. 1. The SEC's complaint alleged that (1) Traffic Monsoon, a limited liability company with a principal place of business in Utah, sold advertising products called "AdPacks"; and (2) Scoville "is the only member and controlling person of Traffic Monsoon" and therefore "controls and oversees all of [Traffic Monsoon's] business functions." *Id.* ¶¶ 13–32. The SEC further alleged that Traffic Monsoon's sale of AdPacks constituted a Ponzi scheme, which in turn amounted to securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5(a) and (c) promulgated thereunder, 17 C.F.R. § 240.10b-5(a) & (c). *Id.* ¶¶ 90–92.

Based on Traffic Monsoon's alleged fraud, the SEC filed an *ex parte* application for a temporary restraining order ("TRO"), an order appointing a receiver, and an order freezing Traffic Monsoon's assets. *See* RJN Exh. 2. On July 26 and 27, 2017, the Utah Court granted all of the SEC's requests. *See* RJN Exhs. 3 & 4.

Subsequently, on March 28, 2017, based on its finding that "[t]he SEC has made a clear showing that it will prevail and that Mr. Scoville will continue to violate the law by operating a

---

[1] Defendants filed a request for judicial notice in support of their motion to dismiss and motion to stay. *See* ECF No. 32 ("RJN"). In that request for judicial notice, Defendants request that the Court take notice of 16 exhibits. Exhibits 1–13 and 16 "are court orders and pleadings that have been publicly filed in related lawsuits involving Traffic Monsoon and Charles Scoville." RJN at 3. Public records, including judgments and other court documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). Further, Plaintiffs do not oppose Defendants' request for judicial notice. Thus, the Court GRANTS Defendants' request for judicial notice as to Exhibits 1–13 and 16.

Exhibits 14 and 15 are referenced in the complaint. Documents referenced in the complaint are appropriate for judicial notice. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Further, Plaintiffs do not oppose Defendants' request for judicial notice. As a result, the Court GRANTS Defendants' request for judicial notice as to Exhibits 14 and 15.

2
Case No. 17-CV-02558-LHK
ORDER STAYING CASE

Ponzi scheme absent an injunction," the Utah Court issued a preliminary injunction maintaining both the receivership and the asset freeze imposed by the TRO. *See* RJN Exh. 7 at 43; RJN Exh. 8 at 1–3. The Utah Court also issued the following stay of litigation:

> The Court hereby orders a stay of all litigation in any court against Traffic Monsoon, LLC or Charles Scoville where (1) the Securities and Exchange Commission is not a party or privy to a party in the lawsuit and (2) the lawsuit involves or seeks to recover the assets frozen by this Order. The parties to any such litigation are enjoined from taking any action in connection with the lawsuit, including, but not limited to, the issuance or employment of process. All courts presiding over any such litigation are also enjoined from taking or permitting any action in the lawsuit until further order of this Court.

RJN Exh. 8 at 3. However, because the Utah Court found that its preliminary injunction order contained several controlling legal questions "as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation," the Utah Court certified its preliminary injunction order for interlocutory appeal to the Tenth Circuit pursuant to 28 U.S.C. § 1292(b). *Id.* at 44. The Utah Court specifically identified three issues for which there was a "substantial ground for difference of opinion." *Id.* One of those issues was whether "Traffic Monsoon's particular business model constitutes a Ponzi scheme." *Id.*

On April 14, 2017, Traffic Monsoon and Scoville appealed the Utah Court's preliminary injunction to the Tenth Circuit. *See* Notice of Appeal, ECF No. 85, *SEC v. Traffic Monsoon, LLC*, No. 16-cv-00832-JNP (D. Utah Apr. 15, 2017). On April 17, 2017, the Tenth Circuit docketed this appeal. *See SEC v. Traffic Monsoon, LLC*, No. 17-4059 (10th Cir.).

**B. The Instant Case**

On May 4, 2017, Plaintiffs Kingsley Ezeude and Chukwuka Obi (collectively, "Plaintiffs") filed a complaint against Defendants PayPal, Inc. and PayPal Holdings, Inc. (collectively, "Defendants"). ECF No. 1 ("Compl."). Plaintiffs brought their action both individually and on behalf of a putative class. *See id.* at 1. In their complaint, Plaintiffs allege that (1) Plaintiffs are victims of the Ponzi scheme operated by Traffic Monsoon and Scoville; (2) Defendant PayPal, Inc., served as a payment processor for Traffic Monsoon; and (3) the Ponzi scheme operated by

Traffic Monsoon and Scoville "was facilitated by the knowing assistance and negligent actions of Defendant PayPal, Inc." *Id.* ¶¶ 1, 3. Plaintiffs' complaint asserts five causes of action against Defendants, including (1) aiding and abetting fraud; (2) aiding and abetting a breach of fiduciary duty; (3) gross negligence; (4) negligence; and (5) violation of Cal. Corp. Code § 25504.1. *Id.* at 36, 40, 46, 48, 49.

On September 7, 2017, Defendants filed a motion to dismiss. ECF No. 30. That same day, Defendants filed the instant motion seeking to stay the proceedings in this case until the Utah Court's stay order is lifted. ECF No. 31.

## II. LEGAL STANDARD

"A district court has the inherent power to stay its proceedings. This power to stay is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Gustavson v. Mars, Inc.*, 2014 WL 6986421, at *2 (N.D. Cal. Dec. 10, 2014) (quoting *Fuller v. Amerigas Propane, Inc.*, 2009 WL 2390358, at *1 (N.D. Cal. Aug. 3, 2009)) (internal quotation marks omitted). In considering whether to exercise its discretion to grant a stay, a court should weigh three factors: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The Court refers to these factors as the *Landis* factors because they were drawn from the U.S. Supreme Court's decision in *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936).

## III. DISCUSSION

Defendants move to stay the proceedings in this case until the stay order in the *Traffic Monsoon* case is lifted. Defendants also argue that a stay is warranted because the Utah Court certified its preliminary injunction order for interlocutory appeal to the Tenth Circuit. The Court therefore considers the *Landis* factors to determine whether a stay is warranted.

### A. Possible Damage to Plaintiffs and Hardship to Defendants

4

Case No. 17-CV-02558-LHK
ORDER STAYING CASE

The Court first finds that the possible damage to Plaintiffs from a stay is likely minimal. This is because Plaintiffs define the putative class as:

> All persons who invested in Traffic Monsoon by purchasing an AdPack by transferring funds into Traffic Monsoon's PayPal account between September 2014 and February 2016, who have not received a refund of their funds invested in Traffic Monsoon from PayPal and who resided outside of the United States at the time of their investment in Traffic Monsoon.

Compl. ¶ 163. Currently, the Utah Court's appointed Receiver has control of Traffic Monsoon and Scoville's $60 million dollars in assets and has "commenced an investigation" in order to "administer the Receivership Estate and propose[] a plan of distribution as quickly as possible." RJN Exh. 10 at 5, 22, 30. Thus, it appears that Plaintiffs and members of the putative class could potentially recover at least some of the money they lost in connection with Traffic Monsoon's AdPacks from any eventual distribution of the Receivership Estate. Indeed, Plaintiffs do not argue or offer any reason for why members of the putative class would be ineligible for such recovery.

Moreover, as discussed above, Plaintiffs allege that Defendants aided and abetted Traffic Monsoon and Scoville's fraud by serving as the payment processor for Traffic Monsoon and Scoville's Ponzi scheme. If Traffic Monsoon and Scoville are not liable for fraud, then Defendants cannot be liable for aiding and abetting Traffic Monsoon and Scoville's commission of fraud. Thus, necessarily Traffic Monsoon and Scoville's liability should be determined first.

The instant Court cannot adequately adjudicate Traffic Monsoon and Scoville's liability because the stay order in the *Traffic Monsoon* case prohibits the Defendants from impleading Traffic Monsoon and Scoville as parties to the instant action. As discussed above, the Utah Court issued the following stay order:

> The Court hereby orders a stay of all litigation in any court against Traffic Monsoon, LLC or Charles Scoville where (1) the Securities and Exchange Commission is not a party or privy to a party in the lawsuit and (2) the lawsuit involves or seeks to recover the assets frozen by this Order. The parties to any such litigation are enjoined from taking any action in connection with the lawsuit, including, but not limited to, the issuance or employment of process. All courts presiding over any such litigation are also enjoined from taking or permitting any action in the lawsuit until further order of this Court.

5

Case No. 17-CV-02558-LHK
ORDER STAYING CASE

1 RJN Exh. 8 at 3. As a result, this Court is not inclined to attempt to adjudicate Traffic Monsoon and Scoville's liability in their absence. As stated above, Defendants' liability cannot be determined and Plaintiffs cannot secure recovery from Defendants until Traffic Monsoon and Scoville's liability is determined.

Moreover, Defendants assert that the Utah Court's stay order prevents Defendants from obtaining discovery from Traffic Monsoon and Scoville. Although the instant Court does not believe that is necessarily true, the expansiveness of the Utah Court's stay order does call the availability of such discovery into question. Moreover, Defendants have submitted email communications between Defendants' counsel and SEC's counsel in the *Traffic Monsoon* case indicating that the SEC will object to Defendants' requests for discovery from Traffic Monsoon and Scoville on the grounds that such third party discovery is barred by the Utah Court's stay order. *See* ECF No. 54-1 at 5.

Plaintiffs concede that any request for discovery from Traffic Monsoon and Scoville will likely have to be obtained from the Utah Court Receiver. *See* ECF No. 48 at 12. Responding to discovery requests and litigating any discovery disputes may divert the Receiver's attention and resources away from the Receiver's investigation and efforts to propose a plan of distribution. *See* RJN Exh. 10 at 5, 22, 30. Moreover, because the Receiver will likely be compensated from, and the Receiver's legal expenses will likely be paid from, the Receivership Estate, such discovery litigation expenses may unnecessarily reduce the instant Plaintiffs' potential compensation from the Receivership Estate. Thus, the Court finds that the Defendants' hardship if they were required to go forward with this case is considerable and outweighs the minimal damage to Plaintiffs.

**B. The Orderly Course of Justice**

Finally, the Court finds that considerations of judicial efficiency and the orderly course of justice weigh heavily in favor of staying the proceedings in the instant case. As discussed above, Defendants' liability in the instant case is necessarily derivative of, and therefore dependent upon, whether Traffic Monsoon and Scoville committed fraud in connection with Traffic Monsoon's sale of AdPacks. That issue is precisely what is being litigated in the *Traffic Monsoon* case.

6
Case No. 17-CV-02558-LHK
ORDER STAYING CASE

Importantly, the *Traffic Monsoon* case has not yet been fully adjudicated on the merits. For example, although the Utah Court granted a preliminary injunction because it found a clear showing that Traffic Monsoon would "continue to violate the law by operating a Ponzi scheme absent an injunction," RJN Exh. 7 at 43, the Utah Court certified the issue of whether "Traffic Monsoon's particular business model constitutes a Ponzi scheme" for interlocutory appeal to the Tenth Circuit because there is "substantial ground for difference of opinion" on that issue. RJN Exh. 8 at 44. As a result, absent a stay, this Court would be the third forum to adjudicate the issue of whether Traffic Monsoon and Scoville committed fraud in connection with Traffic Monsoon's sale of AdPacks. Thus, allowing the instant case to go forward would be duplicative of the Utah Court case and the Tenth Circuit appeal and risks inconsistent rulings on the same issues. Litigating the same issues in a third jurisdiction does not facilitate the orderly course of justice or promote judicial efficiency.

## IV. CONCLUSION

Because the Court finds that all three *Landis* factors weigh in favor of a stay, the Court STAYS the proceedings in this case until the Tenth Circuit resolves the interlocutory appeal in the *Traffic Monsoon* case and the Utah Court's stay order is lifted. Within seven days of the latter of these two events, the parties are ORDERED to file an updated Joint Case Management Statement pursuant to Civil Local Rule 16-10(d).

The Clerk shall administratively close the file. This is a purely internal administrative procedure that does not affect the rights of the parties.

**IT IS SO ORDERED.**

Dated: November 15, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge